Bauer *v.* P. A. Cutri Company of Bradford, Inc.
(et al., Appellants).

Argued March 21, 1969. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

R. T. *Mutzabaugh,* with him *Mutzabaugh & Mutzabaugh,* for appellant.

*James K. Angell,* with him *Angell and Angell,* for appellee.

OPINION BY MR. JUSTICE ROBERTS, May 9, 1969:

In 1961, appellee sold his insurance agency in Bradford, Pennsylvania to Rand for $2,500.00 in cash and an unliquidated amount to be computed from a formula based on a percentage factor multiplied by yearly renewal figures over a period of years. Appellee also agreed to sign a covenant-not-to-compete, the exact terms of which are no longer relevant. Rand proceeded to organize the Bradford Area Insurance Center Agency, Inc., which employed appellee on a commission basis and paid him $500.00 per month to apply to the purchase price of the Agency still owed by Rand.

Subsequently Rand transferred his interest in the Agency to Cutri. In 1964 Cutri and appellee apparently agreed upon $5,000.00 as the sum still owed to appellee from the initial purchase by Rand, and Cutri agreed to pay that sum to appellee. At the same time, Cutri and appellee orally agreed that appellee would continue with the Agency as a salaried employee, to be paid $500.00 per month, a sum which later was raised to $550.00 per month. Appellee once again entered into a covenant-not-to-compete, which was part of the instrument which contained the agreement that the agency would pay appellee $5,000.00. The agreement stated "That Bradford Area Insurance Center Agency, Inc. agrees to pay over to the Seller [appellee] Five Thousand and ($5,000.00) Dollars upon the

execution of this Agreement, *receipt of which is hereby acknowledged by the Seller,* in full satisfaction of original agreement." (Emphasis supplied.)

Despite this acknowledgement, appellee was not paid the $5,000.00, although Cutri did help appellee to obtain a loan in that amount. Appellee continued to work for the Agency, which became the P. A. Cutri Company of Bradford, Inc. until 1967. At that point, the Agency and its rights and obligations were purchased by Sturm, appellant in this action. Appellant had also been an employee of the Agency, and appellee had known of appellant's interest in purchasing the company. Appellant likewise knew of the 1964 agreement between appellee and Cutri, and of appellee's acknowledgement of the receipt of the $5,000.00 owed to him. Appellee gave no indication that the money had not in reality been paid to him, and prior to instituting this suit, made no claim for it.

After taking over the Agency, appellant informed appellee that the latter's salary was being discontinued, and threatened to enjoin appellee from selling insurance in the area if appellee attempted to do so. Appellee countered by bringing this suit in equity to have the covenant-not-to-compete declared null and void and to recover the $5,000.00 which had never been paid to him. The court below found for appellee on both counts, and after dismissing appellant's exceptions, entered a final decree and judgment. Appellant has waived his objections to that part of the decree that strikes down the covenant-not-to-compete, and appeals only from the $5,000.00 judgment.

Appellant first claims that it was error for the court below to hear testimony concerning appellee's nonreceipt of the $5,000.00 in question. Appellant maintains that this testimony violated the parol evidence rule since it was proof that varied the explicit

terms of the writing, which stated that appellee had indeed received the money. However it has long been the law in this Commonwealth that "receipts which are mere acknowledgements are in no way contractual in their nature and hence are not subject to the parol evidence rule . . . ." *Wagner v. Marcus*, 288 Pa. 579, 584, 136 Atl. 847, 848 (1927). Only where the receipt represents an exclusive memorial of the contractual agreement between the parties does the parol evidence rule apply. *Id.*; *Emery Estate*, 362 Pa. 142, 148, 66 A. 2d 262, 265 (1949) ; "The rule that a receipt is only prima facie evidence of payment, and may be explained by parol, does not apply when the question involved is not as to the fact of payment but as to the existence of rights springing out of the contract." See *Bardwell v. The Willis Co.*, 375 Pa. 503, 506, n., 100 A. 2d 102, 104, n.1 (1953). Cf. *Pronzato v. Guerrina*, 400 Pa. 521, 163 A. 2d 297 (1960) ; *Peyton v. Margiotti*, 398 Pa. 86, 156 A. 2d 865 (1959).

There is no question that the case before us involves merely a dispute as to "the fact of payment"—whether appellee did or did not receive the money in question. Appellee is not questioning "the rights springing out of the contract," but simply is demanding the money due, the consideration for his entering into the agreement. Cf. *Pronzato v. Guerrina*, supra. It was thus proper for the court below to admit evidence proving that appellee had never been paid.

Appellant next claims that appellee's recovery should be barred by the equitable doctrines of laches and/or unclean hands, since appellee did not inform appellant that the Agency owed appellee money and did not make a claim for the money until after appellant had purchased the Agency. Appellant claims that he was prejudiced by this action (or nonaction) of appellee, since he did not consider the $5,000.00 ob-

ligation when negotiating to purchase the Agency. Appellee claims that his conduct was completely innocent since he is not possessed of business sense of the most astute kind, and as a result, did not realize that the money was owed to him until after appellant purchased the Agency and stopped paying his salary.

It is clear at the outset that appellee's claim for money damage is one normally cognizable at law. Of course since appellee asked to have the covenant-not-to-compete declared null and void, this action was properly in equity, and having granted the equitable relief prayed for, the chancellor was also free to resolve other questions raised in the litigation. See, e.g., *Arcadia Theatre Co. v. Sablosky*, 418 Pa. 34, 209 A. 2d 375 (1964). This does not mean, however, that appellant can use equitable defenses to defeat appellee's legal claim for money damages. These equitable defenses are designed only to prevent an "undeserving" plaintiff from obtaining by an appeal to the chancellor's "conscience" the kind of *extraordinary* remedies available in equity, but they in no way prejudice his rights at law. Therefore it has long been the rule in this Commonwealth that in dealing with legal rights, a court of equity follows and is bound by rules of law, and does not use equitable considerations to deprive a party of his rights at law. See *Albright v. Albright*, 228 Pa. 552, 560-61, 77 Atl. 896, 898-99 (1910); *Abrahams v. Wilson*, 134 Pa. Superior Ct. 297, 303, 3 A. 2d 1016, 1019 (1939); Pomeroy, Equity Jurisprudence §425 at 190 (5th Ed. 1941). Thus even assuming arguendo that we could find—as the chancellor apparently did not—that appellee was guilty of laches, appellant could not prevail. Appellee was only required to bring his claim for money damages within the six year period established in the statute of limitations, Act of March 27, 1713, 1 Sm. L. 76, §1, 12 P.S. §31, and this he clearly did.

We also do not believe that appellee is estopped from now claiming his money because appellant purchased the Agency in the belief that the claim did not exist. Appellee was not obligated in any way to announce that he was owed the money, assuming that he did realize that the money was owed to him. Although it is not clear from the record, if appellant was misled, perhaps it was because the obligation did not appear on the Agency's books, where it would have been apparent to a potential purchaser. The mere fact that appellee had signed the acknowledgement would not excuse the Agency from carrying the debt on its books until it was paid. If the obligation did appear on the Agency's books, it is appellant's own fault that he did not at least investigate whether it had indeed been paid.

The decree and judgment of the Court of Common Pleas of McKean County are affirmed. Each party to pay own costs.

Mr. Justice COHEN and Mr. Justice POMEROY concur in the result.

———

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

Once again a majority of this Court holds that an absolute, clear and unequivocal admission in a written agreement that a plaintiff has been paid and has received a specific sum of money ($5,000) "in full satisfaction" of an agreement to pay him this sum is a meaningless nullity. The majority hold this even though no fraud, accident or mistake is alleged or involved. Furthermore, plaintiff worked for this Company and its successors as an employee for three years after he acknowledged in writing that he had received the above mentioned $5000, and never once made a claim for this $5,000 until after he was fired.

The cases cited in the majority Opinion are inapposite and clearly distinguishable. This is a lengthy written agreement and is not a mere receipt, and consequently parol evidence is not admissible.

For the above reasons, I strongly dissent.