808 A.2d 912

**W. Lawrence HESS, Appellant,**

**v.**

**GEBHARD & CO. INC., and Eugene Hoaster Company, Inc., Appellees.**

Supreme Court of Pennsylvania.

Argued May 14, 2002.

Decided Oct. 16, 2002.

---

**15.** *See* 42 Pa.C.S. § 9711(h)(4).

150

David J. Brightbill, Lebanon, John P. Krill, Harrisburg, for W. Lawrence Hess.

Harry Walter Fenton, David J. Tshudy, Lebanon, and John J. Ferry, Palmyra, for Gebhard & Co., Inc. and Eugene Hoaster Company, Inc.

## *OPINION*

Justice NEWMAN.

This matter arose as a result of the assignment by Eugene Hoaster Company, Inc. (Hoaster), of the employment agreement and covenant not to compete of Appellant, W. Lawrence Hess (Hess), to Gebhard & Co. (Gebhard), as part of an asset sale of an insurance agency. After thorough review, we reverse.

### *FACTS AND PROCEDURAL HISTORY*

On April 29, 1974, Hess, a life-long resident of Lebanon County, commenced employment as an insurance agent with Hoaster. As part of his employment, Hess executed an

employment agreement in which he consented not to disclose proprietary information and covenanted not to compete with Hoaster within a twenty-five mile radius of the City of Lebanon for a period of five years after the termination of his employment.

The agreement stated in pertinent part:

*THE AGENT AGREES:*

. . . .

3. Not to disclose to any person or organization any information concerning the business of the Agency, or its affairs, secured in the course of, or incidental to the terms of this Agreement, and after its termination.

. . . .

4. Upon the termination of this Agreement, not to engage in the same or similar business as that now carried on by the Agency, nor work for an individual or firm engaged in such line or similar line of business within a radius of twenty-five (25) miles of the City of Lebanon, for a period of five (5) years from the date of termination of this Agreement.

In the event that any court of competent jurisdiction determines this covenant to be unreasonable either in extent of distance or time, it shall be considered modified so as to cover the maximum extent of time and distance which such court shall find permissible under the circumstances.

. . . .

Termination of this Agreement in any manner shall not invalidate the provisions respecting competition and ownership of the business.

(Reproduced Record at 24a; Agent's Agreement at 2.) Hoaster's business consisted primarily of insurance and real estate operations and Hess' primary job was to service Hoaster's existing insurance accounts, for which he received a salary plus benefits.[1] The restrictive covenants in the Agent's Agreement contained no language regarding assignability.

---

1. It is noteworthy that the employment agreement was not specifically drafted for Hess or for one who worked in Hess' capacity. The

In July of 1996, Charles Brooks, Esq. (Brooks) entered into a sales agreement with Gebhard to sell all the assets associated with the insurance portion of his business, effective January 1, 1997. Pursuant to the contract of sale, Brooks sold only the insurance portion of his business to Gebhard, while he retained the real estate operation. He continued to operate as Hoaster, Inc., under the same corporate entity. The agreement also provided that, for three years after the sale, Hoaster would receive, as part of the sale price, the commissions and fees earned on the insurance accounts transferred from Hoaster to Gebhard. The contract included the sale of all of Hoaster's then-existing contracts and agreements, including Hess' employment agreement containing the covenant not to compete. The inventory of assets being sold specifically included the employment agreement, expressly valued at $0.00, and goodwill, expressly valued at $0.00. (Hearing of August 27, 1999, Exhibit 11.) It is undisputed that Hess did not consent to the assignment of the covenant to Gebhard and that no one ever discussed the covenant with him or asked him to agree to its assignment.

In November of 1996, Gebhard informed Hess that it had decided to eliminate Hess' position when Gebhard officially assumed ownership. Gebhard did tell Hess that there might be two positions available on the effective date of sale, neither of which involved the work that Hess had done for twenty-two years, although Gebhard said that he had reservations concerning Hess' ability to perform the positions. One involved new sales only and the other was as a customer service representative, a position requiring typing skills that would be offered at a salary far less than Hess was earning. Hess did not feel that he was qualified for either position and, in December of 1996, he indicated that he was not interested. Hess worked for Hoaster until December 31, 1996, and Gebhard assumed control on January 1, 1997. Gebhard provided Hess with a letter of recommendation.

agreement was designed for a producer of new business rather than a servicer of existing accounts. Thus, as a servicer, Hess received a salary rather than commissions.

In November of 1996, unbeknownst to Hoaster and Gebhard, Hess began employment negotiations with Bowman's Insurance Agency (Bowman's), a competing firm in Lebanon County. In early January of 1997, Hess and Bowman's were in final employment contract negotiations. On January 5, 1997, less than one week after leaving Hoaster, Hess used information that he had acquired while in Hoaster's employ and solicited the County of Lebanon, one of Hoaster's major clients, as a new client for Bowman's. Gebhard and Hoaster learned of this and sent Hess a letter, with a copy to Bowman's, reminding Hess of the covenant not to compete and threatening legal action if Hess refused to comply. As a result of the letter, Bowman's decided against hiring Hess. Shortly thereafter, Hess filed suit against Gebhard, who joined Hoaster as a party defendant.

Hess filed claims in law and equity in the Court of Common Pleas of Lebanon County (trial court), alleging intentional interference with prospective contractual relations; asking the court to enjoin Hoaster and Gebhard from contacting his prospective employers; asking the court to void the enforceability of the employment agreement; requesting that the court void the covenant not to compete; and seeking monetary damages for intentional interference with prospective contractual relations. At the first hearing, the trial court denied the intentional interference with contractual relations claim, based on the pleadings. *Hess v. Gebhard & Co. and Eugene Hoaster & Co.*, No. 1997–01189 (C.P.Pa. May 18, 1998) (Trial Court I). It also held that the assignment of the covenant from Hoaster to Gebhard, even without an explicit assignability clause or permission from Hess, was enforceable. (Trial Court I.) At the second hearing, the trial court again held that the covenant not to compete was assignable and went on to address the reasonableness of the covenant. *Hess v. Gebhard & Co. and Eugene Hoaster & Co.*, No. 1997–01189 (C.P.Pa. February 9, 1999) (Trial Court II). The trial court found the agreement unreasonable as to time and distance, limited the duration of the covenant from the inception of the covenant (January 1, 1997) to the date of the hearing (December 1,

1998), and forbade Hess from contacting then-existing insurance customers of Hoaster and Gebhard for an additional period of two years. (Trial Court II.) It also determined that Hess was free to work for a competing firm in the Lebanon geographical area. (Trial Court II.) At the final hearing, in August of 1999, the trial court declined to address the assignability of the covenant but reviewed the issue of damages. *Hess v. Gebhard & Co. and Eugene Hoaster & Co.*, No.1997–01189 (C.P.Pa. December 29, 1999) (Trial Court III). The court issued its final appealable Order and found that Hess was not entitled to damages. (Trial Court III.)

The Superior Court affirmed, holding that the assigned covenant was enforceable because Hoaster retained a continuing interest in Hess' competitive employment, even after the sale of its business. The Superior Court distinguished the present matter from its decision in *All–Pak, Inc. v. Johnston*, 694 A.2d 347 (Pa.Super.1997), on this basis and that, in the present case and unlike *All–Pak*, Hoaster had a continuing interest in the business. The Superior Court explained:

The lower court held that the assignment of the insurance portion of the business did not destroy the covenant not to compete because Hoaster continued to be involved in the business. Charles Brooks, the owner of Hoaster, testified that he continued to be involved in the insurance portion now owned by Gebhard. Hoaster continued to receive compensation from Gebhard on the proceeds from Hoaster's client base sold to Gebhard. Hess, after he gained new employment with Bowman's Insurance Agency, contacted a client of Gebhard who was formerly a client of Hoaster and attempted to procure the client's business. Because Gebhard's client was a former client of Hoaster, Hoaster would lose compensation from Gebhard if the client went with Bowman's Insurance Agency. Therefore, we find that, unlike the original employer in *All–Pak, Inc.*, Hoaster, who was the original employer in the present covenant, had a continuing interest via Gebhard in enforcing the covenant, not to compete.

*Hess v. Gebhard & Co.*, 769 A.2d 1186, 1191 (Pa.Super.), *petition for allowance of appeal granted,* 566 Pa. 683, 784 A.2d 118 (2001). Thus, the Superior Court determined that, because the sales price was keyed to the performance of the business, Hess was bound by the covenant not to compete to protect the interests of Hoaster in the continuing profitability of the assets purchased by Gebhard. Judge Ford Elliot dissented, stating that she was unable to distinguish the present matter from the Superior Court decision in *All–Pak.*

## DISCUSSION

Restrictive covenants, of which non-disclosure and non-competition covenants are the most frequently utilized, are commonly relied upon by employers to shield their protectible business interests. The non-disclosure covenant limits the dissemination of proprietary information by a former employee, while the non-competition covenant precludes the former employee from competing with his prior employer for a specified period of time and within a precise geographic area. In Pennsylvania, restrictive covenants are enforceable if they are incident to an employment relationship between the parties; the restrictions imposed by the covenant are reasonably necessary for the protection of the employer; and the restrictions imposed are reasonably limited in duration and geographic extent. *Sidco Paper Co. v. Aaron,* 465 Pa. 586, 351 A.2d 250 (1976); *Morgan's Home Equip. Corp. v. Martucci,* 390 Pa. 618, 136 A.2d 838 (1957). "Our law permits equitable enforcement of employee covenants not to compete only so far as reasonably necessary for the protection of the employer." *Sidco,* 351 A.2d at 254. However, restrictive covenants are not favored in Pennsylvania and have been historically viewed as a trade restraint that prevents a former employee from earning a living. *See Jacobson & Co. v. Int'l Env't Corp.,* 427 Pa. 439, 235 A.2d 612 (1967).

### Historical Perspective

As early as the fifteenth century, pursuant to English common law, restrictive covenants in the employment arena

were *per se* void and unenforceable. *Morgan's Home Equip.* (reviewing *Dyer's Case*, Y.B. Mich. 2 Henry 5, f. 5, pl. 26 (C.P.1414) (striking down covenant whereby an individual bound himself to another to refrain from practicing his trade in a particular village for a brief period; the Court observed: "The obligation is void because the condition is against the common law, and by God, if the plaintiff were present he should rot in gaeol till he paid a fine to the King.")). Medieval concepts of apprenticeship prohibited a person from pursuing a trade in which he had not been apprenticed and that one who did so was subject to a penalty. Gary Minda, *The Common Law, Labor and Antitrust,* 11 INDUS. REL. L.J. 461 (1989). Thus, covenants not to compete were disfavored because prohibiting an employee from working under the supervision of one other than his original employer resulted either in his violation of the law or the deprivation of his right to earn a living.

A more equitable reasonableness inquiry eventually replaced the rule of *per se* invalidity in the early eighteenth century. *See, e.g., Mitchell v. Reynolds,* 1 P.Wms. 181, 24 Eng. Rep. 347 (Q.B.1711). In *Mitchell,* the court upheld an agreement whereby a baker assigned the lease of his bakeshop to Reynolds and agreed not to practice his trade as a baker in the same parish for the term of the lease. Justice Parker applied a balancing test and concluded that an individual's right to work, the public's right to unrestrained competition, and the right to contract must all be examined in determining whether to enforce a restrictive covenant. *Id.* The court held the agreement enforceable and reasoned that, while general restraints prohibiting the practice of a trade were void, partial restraints that operated within a small, defined geographic area were enforceable if the consideration was sufficient to show that the agreement was reasonable. *Id.* Thus, the balancing test was born; it has been applied for centuries and is still employed by courts today.

Industrialism spawned the abandonment of the medieval rules of apprenticeship and covenants were refined and ap-

peared in the United States.[2] For the most part, the law in the United States paralleled nineteenth century law in England. Courts here recognized that, in special circumstances, limited restraints on trade were part and parcel of protecting the employer's rights, although the courts were still reluctant to enforce contracts likely to stifle competition. *United States v. Addyston Pipe & Steel Co.*, 85 F. 271 (6th Cir.1898), *aff'd as modified*, 175 U.S. 211, 20 S.Ct. 96, 44 L.Ed. 136 (1899). In Pennsylvania, early distinctions evolved between covenants ancillary to the sale of a business and those ancillary to employment. *Compare, e.g., McClurg's Appeal*, 58 Pa. 51, 1868 WL 7213 (1868) (upholding covenant not to compete within twelve miles ancillary to the sale of a medical practice) with *Keeler v. Taylor*, 53 Pa. 467, 1866 WL 6338 (1866) (striking a covenant containing a penalty for competing against a former employer in the manufacture and sale of platform scales).

In contemporary corporate culture, covenants have developed into important business tools to "allow employers to prevent their employees and agents from learning their trade secrets, befriending their customers and then moving into competition with them." *Miller Mechanical, Inc. v. Ruth*, 300 So.2d 11, 12 (Fla.1974). Courts recognize that parties entering into agreements for the sale of a business generally possess equal bargaining power, unlike parties in the master/apprentice or employer/employee relationship. Therefore, Courts scrutinize restrictive covenants in employment agreements and, in determining whether the burden placed on the employee is unreasonable, courts have concentrated on the temporal and geographic elements of the covenant, albeit often foregoing a review of the public's interest in unrestricted competition.

The development of a body of law in Pennsylvania both paralleled and deviated from the development of the law within other jurisdictions. A review of the case law dealing with employee non-competition agreements reveals that an

2. The earliest known American case involving a restrictive covenant is *Pierce v. Fuller*, 8 Mass. 223 (1811).

overwhelming majority of jurisdictions, including Pennsylvania, require, at a minimum, that such contracts be reasonably related to the protection of a legitimate business interest. Generally, American courts insist that an employer may not enforce a post-employment restriction on a former employee simply to eliminate competition *per se;* the employer must establish a legitimate business interest to be protected.

### Validity of Assignment

Review of the laws and decisions of our sister states that permit the assignment of employee non-competition covenants, as well as federal case law, reveals a wide disparity of treatment among the jurisdictions. More than a dozen states have rendered decisions on whether employment contracts containing covenants not to compete are assignable to the new owner in the event of a sale of the business. The majority of these states have concluded that the restrictive covenants are not assignable. Some of these jurisdictions have based their decision on a finding that the employment contracts, and therefore the covenants, are personal to the parties and may not be assigned.[3] Others have concluded that employment contracts involve personal services and are not assignable.[4]

**3.** *See, e.g., Sisco v. Empiregas, Inc.,* 286 Ala. 72, 237 So.2d 463 (1970) (stating that covenants not to compete are personal to the performance of the company and the employee and are not assignable, particularly as they involve a relationship of personal confidence between the two parties); *Smith, Bell & Hauck, Inc. v. Cullins,* 123 Vt. 96, 183 A.2d 528 (1962) (opining that beneficial interest in employment agreement was personal to employer and not assignable, even though employee used and intended to use the knowledge, experience and customer contacts acquired during employment with former employer). *But see, Custard Insurance Adjusters v. Nardi,* 2000 WL 562318 (Conn.Super.2000) (holding covenants not to compete not assignable, but enforceable if employee continues to work for new owner).

**4.** *See, e.g., Trinity Transport v. Ryan,* 1986 WL 11111 (Del.Ch.1986) (concluding that contract is for personal services and not assignable); *Johnston v. Dockside Fueling of N.A.,* 658 So.2d 618 (Fla. 3rd DCA 1995) (stating that contract is for personal service and requires consent of both parties for assignment); *SDL Enterprises, Inc. v. DeReamer,* 683 N.E.2d 1347 (Ind.Ct.App.1997) (same); *Avenue Z Wet Wash Laundry Co. v. Yarmush,* 129 Misc. 427, 221 N.Y.S. 506 (N.Y.Sup.Ct.1927) (opining that, because the performance cannot be delegated, the contract cannot be assigned, even though the employee continues to work for the new

In contrast, a few jurisdictions have reasoned that an employment contract is assignable in the same manner as any other contract, unless there is a clause prohibiting its assignment.[5]

There are also several federal decisions that are not binding on this Court, but provide persuasive authority. In *American Colortype Co. v. Continental Colortype Co.*, 188 U.S. 104, 23 S.Ct. 265, 47 L.Ed. 404 (1903), Mr. Justice Holmes authored the opinion of the Court and opined that, where there has been a sale of a business, the contract that the assignee employer, or buyer, seeks to enforce is a new contract between the buyer and the employee of the seller, who has continued his employment with the buyer. Mr. Justice Holmes said that, "It is quite manifest that the [assignee employer], if it prevails, will not do so on the ground that, by virtue of the transfer to it, it can claim the beneficial interest in the original agreements...." *Id.* at 266. In *Reynolds & Reynolds v. Hardee*, 932 F.Supp. 149 (E.D.Va.1996), the district court, applying Virginia law, noted that the employee placed considerable trust in the employer by agreeing to the non-compete clause, namely trusting that the employer would not fire him and then invoke the covenant not to compete. Therefore, the court said, because the employment agreement is based on mutual trust and confidence, it is not assignable. Finally, the District Court of Oregon in *Perthou v. Stewart*, 243 F.Supp. 655 (D.Or.1965), concluded that such contracts were not assignable based on the tenet that personal services contracts are never assignable.[6]

owner for some period); *Mid–West Presort Mailing Serv. v. Clark*, 1988 WL 17825 (Ohio App.1988) (holding contracts assignable only where assignment provided).

**5.** *See, e.g., Bradford & Carson v. Montgomery Furniture Co.*, 115 Tenn. 610, 92 S.W. 1104 (1906) (holding that contracts containing covenants not to compete are assignable absent specific language in a covenant prohibiting assignment. Court stated that these are not personal service contracts because no personal service is required, only that the party abstain from particular conduct); *Fink & Sons, Inc. v. Goldberg*, 101 N.J. Eq. 644, 139 A. 408 (1927) (concluding that these contracts are not for personal service and are assignable like any other contract).

**6.** It is also noteworthy that the federal courts in *Siemens Med. Solutions Health Serv. Corp. v. Carmelengo*, 167 F.Supp.2d 752 (E.D.Pa.2001) and

With this framework in mind, we turn to the matter before us. Hess asserts that a restrictive covenant not to compete in an employment contract is not assignable by the former employer to a purchaser of the assets of the employer's business and that the Superior Court erred in so finding. We find this to be an issue of first impression for this Court.

■ In equity matters, appellate review is based on a determination by the appellate court of such questions as whether: (1) sufficient evidence supports the findings of the judge; (2) the factual inferences and legal conclusions based on those findings are correct; (3) there has been an abuse of discretion or an error of law. 16 Standard Pennsylvania Practice 2d § 91:182 (1995) (footnotes omitted). Generally, in an appeal from a trial court sitting in equity, the standard of review is rigorous. *Lilly v. Markvan*, 563 Pa. 553, 763 A.2d 370 (2000). The function of this Court on an appeal from an adjudication in equity is not to substitute its view for that of the lower tribunal; our task is rather to determine whether "a judicial mind, on due consideration of all the evidence, as a whole, could reasonably have reached the conclusion of that tribunal." *Aiken Indus., Inc. v. Estate of Wilson*, 477 Pa. 34, 383 A.2d 808, 810 (1978), *cert. denied*, 439 U.S. 877, 99 S.Ct. 216, 58 L.Ed.2d 191 (1978) (quoting *Masciantonio Will*, 392 Pa. 362, 141 A.2d 362, 365 (1958)). As this appeal raises only an issue of law, our review is plenary. *Commonwealth v. Kelley*, 801 A.2d 551 (Pa.2002).

■ Our law permits equitable enforcement of employee covenants not to compete only so far as reasonably necessary for the protection of the employer's protectible business interests. *Reading Aviation Serv. Co. v. Bertolet*, 454 Pa. 488, 311 A.2d 628 (1973). When, however, the covenant imposes restrictions broader than necessary to protect the employer, we have repeatedly held that a court of equity may grant enforcement limited to those portions of the restrictions that are

*Fonda Group v. Erving Indus., Inc.*, 897 F.Supp. 230 (E.D.Pa.1995), anticipated that this Court would find such covenants unassignable.

reasonably necessary for the protection of the employer.[7] *Jacobson.*

■■■ As previously indicated, this Court has historically distinguished the covenant not to compete contained in an employment agreement from one that is contained in an agreement of sale. *Beneficial Fin. Co. of Lebanon v. Becker,* 422 Pa. 531, 222 A.2d 873 (1966); *see also, March v. Allabough,* 103 Pa. 335, 1883 WL 13402 (1883). The Court specifically stated that "general covenants not to compete, which are ancillary to employment will be subjected to a more stringent test of reasonableness than that which is applied to such restrictive covenants ancillary to the sale of a business." *Hayes v. Altman,* 438 Pa. 451, 266 A.2d 269, 271 (1970)(quoting *Morgan's Home Equip.,* 136 A.2d at 846). In determining whether to enforce a non-competition covenant, this Court requires the application of a balancing test whereby the court balances the employer's protectible business interests against the interest of the employee in earning a living in his or her chosen profession, trade or occupation, and then balances the result against the interest of the public. *Sidco.*

■■■ Fundamental, then, to any enforcement determination is the threshold assessment that there is a legitimate interest of the employer to be protected as a condition precedent to the validity of a covenant not to compete. Generally, interests that can be protected through covenants include trade secrets, confidential information, good will, and unique or extraordinary skills. *Morgan's Home Equip.,* 136 A.2d at 846. If the covenant is inserted into the agreement for some other purpose, as for example, eliminating or repressing competition or to keep the employee from competing so that the employer can gain an economic advantage, the covenant will not be enforced.

7. The trial court, in fact, reformed the covenant temporally and geographically. (Trial Court II.) We express no opinion on the validity of the original covenant or the alterations effected by the trial court, as these matters are not before us.

In the instant matter, Hess contends that the assignment of the covenant was invalid because he did not consent to the assignment, relying on the Superior Court decision in *All–Pak, Inc.* We agree.

In *All–Pak,* Johnston was hired as a sales representative and entered into an employment contract that contained non-disclosure and non-competition covenants. Subsequently, an investment group called "Total–Pak, Inc." purchased all of the assets of All–Pak, Inc., including the name. Total–Pak, Inc. then changed its name to "All–Pak." Johnston continued working for the new "All–Pak" until his employment was terminated, when he began working for a competitor. The new "All–Pak" filed suit against Johnston seeking to enforce the covenant not to compete. After noting the dearth of precedent,[8] the Superior Court refused to allow this new entity to enforce restrictive covenants made between the "old All–Pak" and its employees, holding that restrictive covenants are personal and not assignable without the express consent of the employee. In reaching this conclusion, Judge Schiller wrote:

Strong [public] policy considerations underlie the conclusion that restrictive covenants are not assignable. Given that restrictive covenants have been held to impose a restraint on an employee's right to earn a livelihood, they should be construed narrowly; and, absent an explicit assignability provision, courts should be hesitant to read one into the contract. Moreover, the employer, as drafter of the employment contract, is already in the best position to include an assignment clause within the terms of the employment contract. Similarly, a successor employer is free to negotiate new employment contracts with the employees, as the record reveals new All–Pak did with several employees, or

8. Although this is a matter of first impression for this Court, it was presented with nearly identical fact patterns in *Bauer v. P.A. Cutri Co. of Bradford,* 434 Pa. 305, 253 A.2d 252 (1969) and *Camenisch v. Allen,* 351 Pa. 257, 40 A.2d 420 (1945). The assignability issue in *Bauer* was not raised and the assignor of the contract in *Camenisch* breached the contract prior to assignment.

secure the employee's consent to have the prior employment contract remain in effect.

*All–Pak*, 694 A.2d at 351 (internal footnotes omitted). The Superior Court distinguished its decision in *All–Pak* from the present matter on the basis of a continuing interest ascribed to Hoaster in the maximization of the sale proceeds from his insurance business, while in *All–Pak*, the asset sale was complete and the seller received the entire proceeds from the sale of the business. The Superior Court, in the present case, concluded that, if the restrictive covenant were not enforced, Hoaster would lose compensation from Gebhard and, therefore, Hoaster retained a continuing interest.

Hoaster and Gebhard contend that an employer has a protectible interest in the customer good will developed by its employees, relying on this Court's decision in *Boldt Mach. & Tools, Inc. v. Wallace*, 469 Pa. 504, 366 A.2d 902 (1976). Hoaster and Gebhard insist that this Court concluded in *Boldt* that such an employer's interest is one that must be recognized when enforcing a covenant not to compete against a former employee. As such, Hoaster and Gebhard contend that Hoaster's interest in the employment contract with Hess is identical to that of *Boldt* and, therefore, this interest withstands the assignment of the insurance contracts to Gebhard.

This Court has defined good will as that which "represents a preexisting relationship arising from a continuous course of business...." *Butler v. Butler*, 541 Pa. 364, 663 A.2d 148, 152, n. 9 (1995). The Court has also explained that goodwill is essentially the positive reputation that a particular business enjoys. *Solomon v. Solomon*, 531 Pa. 113, 611 A.2d 686 (1992). However, where good will is intrinsically tied to single individuals, as in sole proprietorships and the like, good will often does not survive the disassociation of those individuals from the business. This type of good will, which is nontransferable and purely personal to the owner, has little value in terms of a sale of the business. We note that the value placed on the good will of the business in the sale transaction between Hoaster and Gebhard was $0.00. We can hardly see

how good will with no apparent monetary value provides a legally protectible business interest for either Hoaster or Gebhard. We also remark that *Boldt* is not authoritative for the Hoaster and Gebhard contentions because it represents a per curiam affirmance by a deeply divided Court.

Hoaster and Gebhard also maintain that, because Hoaster had a continuing interest in the performance of the contracts sold to Gebhard, Hoaster had a financial stake in the proceeds of the insurance contracts after Hess' termination of employment. However, we find this argument unpersuasive in view of the Commonwealth's policy of strict interpretation of restrictive covenants in employment contracts.

We observe that nothing in the employment agreement executed by Hess and Hoaster suggests that the parties intended or expected the restrictive covenants to be assignable. Further, this Court addressed assignability, albeit within the context of a liquor license, in *Wilcox v. Regester*, 417 Pa. 475, 207 A.2d 817, 820 (1965), in which we stated the general proposition that, "an assignment of a right will not be effective if it purports to make a material change in the duties or responsibilities of the obligor, unless the obligor assents to such changes." In the instant matter, the assignment makes a material change in Hess' obligations. He is foreclosed from competing on any level with a much larger business entity.

We also find that we agree with Judge Schiller that covenants should be construed narrowly and that courts should hesitate "to read [an assignability provision] into the contract." *All–Pak,* 694 A.2d at 351. Moreover, we are persuaded that the better rule in deciding whether restrictive covenants are assignable is that the employment contract, of which the covenant is a part, is personal to the performance of both the employer and the employee, the touchstone of which is the trust that each has in the other. The fact that an individual may have confidence in the character and personality of one employer does not mean that the employee would be willing to suffer a restraint on his employment for the benefit of a stranger to the original undertaking. Therefore, we hold

that a restrictive covenant not to compete, contained in an employment agreement, is not assignable to the purchasing business entity, in the absence of a specific assignability provision, where the covenant is included in a sale of assets. In reaching this conclusion, we find that personal characteristics of the employment contract permeate the entire transaction. Like the contract for hire, upon which the covenant was given, the employee's restrictive covenant is confined to the employer with whom the agreement was made, absent specific provisions for assignability. However, this does not end the matter. Hoaster and Gebhard assert that, should we decide that the covenant is unenforceable as to Gebhard, it is still enforceable by Hoaster.

Hess asserts that the assignment extinguished Hoaster's interest in the employment contract and the covenant not to compete, and contends that Hoaster retains no rights to the covenant, relying on the decision of this Court in *Wilcox.* Hess, however, misconstrues our language in *Wilcox.* This Court merely stated in *Wilcox* that the assignment was not effective where the obligor has not assented to the assignment. There is no holding contained in *Wilcox* that the rights of the assignor are extinguished when the assignment is ineffective.

Hoaster and Gebhard argue in the alternative that, if the assignment is invalid and Gebhard may not enforce the covenant, then Hoaster may enforce the non-competition covenant against Hess. Hoaster and Gebhard assert that, because Hoaster continues to possess an interest in Gebhard's retention of Hoaster's former insurance clients, the covenant not to compete is still valid, as long as it is reasonable. Hess asserts, however, that the nature of Hoaster's continuing interest, pivotal to the decision of the Superior Court, is merely in terms of the payout from the asset purchase. As such, Hess complains that the interest of Hoaster is too attenuated and does not stem from a recognized protectible business interest because Hoaster is no longer in the insurance business. We must agree. As we previously stated, "Our law permits equitable enforcement of employee cove-

nants not to compete only so far as reasonably necessary for the protection of the employer." *Sidco*, 351 A.2d at 254. We have also indicated that, in determining whether to enforce a non-competition covenant, the Court must balance the employer's protectible business interest against the oppressive effect on the employee's ability to earn a living in his or her chosen profession, trade or occupation. *Id. See Hayes* (refusing to enforce a restrictive covenant in the employment contract of an optometrist because the employer had sold his practice and retained no protectible business interest).

 Hoaster asserts a continuing interest in the insurance accounts sold to Gebhard because it retains a financial interest in the performance and continuance of the accounts as reflected in the payout provisions of the sales agreement. The Superior Court agreed, reasoning that, as long as Hoaster retained a financial interest in the performance of the covenant in such a way that it would benefit by the performance of the covenant and lose by its violation, the covenant was enforceable. The "financial interest" found sufficient to keep the covenant alive was the retention of an interest in the future profits of the business of the corporation in the hands of a successor. However, pure financial gain at the expense of restricted competition is insufficient to constitute a protectible business interest. This Court, quoting *Addyston Pipe & Steel Co.,*[9] said in *Jacobson,*

> [W]here the sole object of ... the contract ... is merely to restrain competition, and enhance or maintain prices, it would seem that there was nothing to justify or excuse the restraint, that it would necessarily have a tendency to monopoly, and therefore would be void. There is in such contracts no main lawful purpose. . . . ˙

*Jacobson,* 235 A.2d at 617. Hoaster has not demonstrated that the information it seeks to protect, mainly its prices and customer lists, is particular or unique to its business and deserves protection as a trade secret or confidential information. In point of fact, there are no trade secrets or proprie-

9. 85 F. 271, 281–82 (6th Cir.1898), *aff'd,* 175 U.S. 211, 20 S.Ct. 96, 44 L.Ed. 136 (1899).

tary information relative to Hoaster's prior insurance business that are germane to the conduct of the current real estate business of Hoaster. Moreover the potential customers that were available to Hoaster's insurance business were the same as those that were available to Gebhard or to any other insurance agency operating in Lebanon County and the identities of potential clients were widely known and easily available. If the information the employer seeks to keep confidential could be obtained by legitimate means by its competitors, enforcement of the covenant on that basis is not appropriate. *Carl A. Colteryahn Dairy v. Schneider Dairy*, 415 Pa. 276, 203 A.2d 469, 473 (1964) (stating that "equity will not protect mere names and addresses easily ascertainable by observation or reference to directories."); *accord Bettinger v. Carl Berke Assoc., Inc.*, 455 Pa. 100, 314 A.2d 296 (1974). Because Hoaster cannot demonstrate that confidential information is at issue and, because Hoaster has sold the insurance accounts and is no longer in the insurance business, Hoaster has no legally protectible business interest in those insurance accounts. Without a protectible business interest, Hoaster may not enforce the covenant not to compete.

We find no support for the right of Hoaster and Gebhard, pursuant to the assignment, to impose upon Hess the potential increase in burden of a new and expanded business venture. We are also mindful that it is the employer that drafts an employment agreement that is executed by both parties for the benefit and protection of the employer. It is a simple matter for the employer to insert an assignment clause into the agreement at the time that the agreement is drafted to cover future contingencies, such as those that occurred here. The failure of an employer to include specific provisions in an employment contract will not be judicially forgiven or corrected at the expense of the employee.

Accordingly, because enforcement is not reasonably necessary to protect the current, non-protectible business interests of Hoaster and because an assignment of a restrictive employment covenant without the consent of the assignee otherwise

offends public policy, we reverse the Order of the Superior Court.

Mr. Justice EAKIN files a concurring and dissenting opinion in which Mr. Justice CASTILLE joins.

Justice EAKIN.

### CONCURRING AND DISSENTING OPINION

I agree that an express clause is an appropriate prerequisite to assignablility of a noncompetition agreement. However, I believe the original party's right to enforce the covenant here remains, and hence dissent from that portion of the analysis of my colleagues.

Part of the sale price was Hoaster's entitlement to commissions and fees on existing accounts for three years after sale. That is, Hoaster took less purchase money up front and expected to receive the rest of the sale price over the next three years. His decision to accept this arrangement was certainly with the consideration that he had a covenant with Hess preventing the latter from competing and jeopardizing those expected fees. In such a case, how can we say he cannot protect that expectation by enforcing that for which he bargained for with Hess?[1] His expectations, obviously factored into the terms of sale, were jeopardized by Hess' efforts to remove existing accounts to other companies. I cannot agree he had no protectable business interest simply because his interests were financial rather than in the nature of information.

I join the majority's holding that an assignability provision is necessary for the covenant to be passed from seller to buyer. However, if it is not assignable, it is not necessarily extinguished by the sale; where the seller retains a significant tangible interest in the matters affected by the covenant, I

---

1. My colleagues justify restricting the assignability of the covenant in part because of the personal nature of the covenant in the first place—it is between the contracting parties. This coin has two sides, however. If the covenant is truly personal to Hoaster, his ability to enforce it survives the sale.

would find the seller retains the right to enforce the covenant, if reasonable.

Mr. Justice CASTILLE joined.