## USI MidAtlantic Inc. v. Wilson

C.P. of Philadelphia County, July Term 2014, No. 2746; 2365 EDA 2014

*Paul Calvin Lantis* and *James Samuel Green,* for appellant.

*Christopher P. Leise, Peter Joseph Mooney* and *Vincent Nathaniel Barbera,* for appellant.

MCINERNEY, J., Sept. 26, 2014—This appeal is relative to this court's order dated August 8, 2014 and docketed on August 11, 2014 granting plaintiff USI MidAtlantic, Inc.'s ("USI") petition for Special and Preliminary Injunction. Plaintiff USI is a licensed insurance producer and consulting firm which specializes in providing Property and Casualty Commercial Insurance and Employee Benefits products and related consulting

services to its client.[1] Howard G. Wilson ("Wilson") joined USI as a producer focusing on USI's Property & Casualty products lines on September 21, 2012 as part of an acquisition. At the time of the hiring, Wilson understood and contemplated that he would thereafter sign a formal employment agreement with USI. Upon joining USI, Wilson held himself out to the public as a Vice-President-Regional Market Producer for USI.[2]

On April 1, 2013, Wilson executed an Employment Agreement with USI. The agreement set forth Wilson's position, responsibilities and term.[3] The agreement also provided for a non-solicitation and confidentiality provision which stated in part as follows:

6. NON-SOLICITATION AND NON INTERFERENCE

6.1. Non-Solicitation of Clients and Active Prospective Clients. On behalf of any Competitive Business, Producer [Wilson] shall not, without the Company's [USI] prior written consent, for the benefit of Producer [Wilson] or another Person:

(a) Solicit, sell, or provide or accept any request to provide services to, consult for, sign or accept a broker of record letter, with, or induce the termination, cancellation or non-renewal of, any Company [USI] client, in each case, whose Client Account Producer [Wilson] managed or regularly serviced, and/or

---

1. Plaintiff's petition for Special and Preliminary Injunction ¶ 3; defendants' response ¶3.

2. Plaintiff's petition for Special and Preliminary Injunction ¶ 5; defendants' response ¶5.

3. Plaintiff's petition for Special and Preliminary Injunction ¶ 6; defendants' response ¶6.

about which Producer [Wilson] obtained Confidential Information on behalf of the Company [USI] in the two (2) years prior to the termination of the Producer's [Wilson] employment with the Company [USI]; and/or

(b) Solicit, sell, or provide or accept any request to provide services to, consult for, sign or accept a broker of record letter with, or induce the termination, cancellation or non-renewal of, any Active Prospective Client, in each case, which Producer [Wilson] solicited and/or about which Producer [Wilson] obtained Confidential Information on behalf of the Company [USI] in the six (6) months prior to the termination of the Producer's [Wilson] employment with the Company [USI].

(c) The restrictions set forth in Section 6.1 (a), above, shall apply throughout the Term hereof and thereafter until two (2) years after the effective date on which Producer [Wilson] is no longer employed, for any reason, by the company, its successors or assigns. Producer [Wilson] agrees that (i) the duration of the non-solicitation obligations hereunder shall be extended by the period of time in which the Producer [Wilson] is in breach of those obligations and (ii) the extended duration shall be measured from the date of the court order granting injunctive relief.[4]

By executing the Employment Agreement, Wilson represented and warranted to USI that he had no

---

4. The Employment Agreement defines the terms Company Client, Active Prospective Client and Client Account. Employment Agreement ¶1. *See also*, Employment Agreement ¶ 6.

ownership rights to any Client Accounts and that he understood the purpose behind the Non-Solicitation and Confidentiality provisions.[5] After executing the Agreement, Wilson was provided access to USI's confidential, proprietary and trade secret information.[6] The Employment Agreement provided and set forth compensation terms which provided Wilson with substantial financial consideration for the Non-Solicitation and Confidentiality provisions in the Employment Agreement. In addition to an annual base salary of $200,000 during his first two years with USI, Wilson received additional compensation in the form of a "Retention Bonus."[7]

---

5. Employment Agreement ¶ 9.7, ¶ 6:3; 8. *See also,* plaintiff 's petition for Special and Preliminary Injunction ¶11; Defendants' response ¶11.

6. Confidential information was defined by the Employment Agreement to include "any business information of a USI Company, that is not already generally available to the public (unless such information has entered the public domain and become available to the public through fault on the part of the Party to be charged hereunder), including 1) the identity, authority and responsibilities of key contacts and decision-makers employed by the Company Clients and Active Prospective Clients; ii) the Company's customers' and active prospects' types, terms and conditions of coverage and particularized insurance needs, requirements, risk specifications, preferences, expiration dates, claims and loss histories, and commission rates, fees and premiums; iii) the terms and conditions of the Company's customers' and active prospects' benefits and compensation plans; iv) information furnished to the company in confidence by its customers and active prospects; and v) the Company's and its corporate affiliates' business plans, marketing strategies, and pricing structure, criteria and formulae for insurance and benefits products and claims management, and unpublished financial data and statements and vi) any and all other information that constitutes a trade secret under the governing trade secret law." Employment Agreement ¶ 1.

7. Whether Wilson received additional consideration for agreeing to the Non Solicitation and Non Interference provision is not an issue. However, the additional compensation in the form of retention payments satisfies the requirement for additional consideration.

As a Producer, Wilson had access to USI's confidential and proprietary information. While still employed by USI and prior to his resignation, Wilson sought out and secured employment with defendant Lyons, a company that competes directly with USI within the Property & Casualty insurance space in which Wilson specializes in or around Philadelphia.[8] On July 18, 2014, Wilson tendered his resignation to USI's president and CEO, Philip Remig. Prior to submitting his letter of resignation, Wilson notified his long time clients that he would be leaving USI.[9] On the same day the letter of resignation was tendered, USI received from three major USI clients, who were long time clients of Wilson, broker of record letters transferring their accounts to Lyons as their exclusive broker.[10] Thereafter, several more USI clients were lost to Lyons.[11]

On July 21, 2014, counsel for USI sent Wilson and Lyons letters demanding that they cease and desist their unlawful conduct.[12] On July 24, 2014, USI filed a complaint and Petition for Special Injunction. The court

8. Plaintiff's petition for Special and Preliminary Injunction ¶14-15; Defendants' response ¶14-15.

9. Plaintiff's petition for Special and Preliminary Injunction ¶19, 22; Defendants' response ¶ 19, 22.

10. Plaintiff's petition for Special and Preliminary Injunction ¶23; Defendants' response ¶ 23.

11. Plaintiff's petition for Special and Preliminary Injunction ¶ 24; Defendants' response ¶ 24. Defendants argue the seven clients that migrated to Lyons were dissatisfied with USI and voluntarily left without any solicitation by Wilson. However, the undisputed evidence is that Wilson contacted his nine clients and provided them with the identity of his new employer Lyons. In addition to contacting the clients, Wilson accepted the broker of record letters in direct breach of the Employment Agreement.

12. Plaintiff's petition for Special and Preliminary Injunction ¶27; Defendants' response ¶27.

issued an order requiring a response to the petition and scheduled a rule hearing for August 8, 2014. At the time of the hearing, seven of nine clients which were handled by Wilson submitted broker of record letters transferring their business from USI to Lyons. On August 8, 2014, the court heard oral argument and after taking into consideration the papers submitted by the parties as well as the arguments made by counsel, the court granted the petition for a Special Injunction. The order specifically provided as follows:

1. Wilson shall be prohibited from violating the restrictive covenants set forth in his Employment Agreement with USI;

2. Wilson and Lyons, and any other persons acting on their individual or collective behalf, shall be prohibited from using, utilizing, reviewing or copying any of USI's confidential and proprietary information, including but not limited to its: a) customer lists and key-person contact information; b) client-specific data, such as client needs and insurance requirements and preferences; c) client policyholder information, including but not limited to policy numbers, expirations and carrier information, d) active prospective client lists, including contact and other pertinent information developed by USI to provide it with a competitive advantage when soliciting the prospective client's business, and e) copies of various forms and business documents devolved and used by USI to conduct its business;

3. Wilson and Lyons shall, not later than ten (10) days from the date of this Order, return any and all originals and destroy and/or permanently delete any and all copies of USI's confidential and proprietary information in their individual and/or collective possession;

4. Wilson shall, not later than ten (10) days from the date of this Order, contact each and every client of USI he contacted and advise each client that as a result of litigation that neither he nor Lyons may accept their business and that they may return to USI or engage any other broker of their choice, other than Lyons, until said issue is resolved.

5. This Special Injunction shall continue in effect until further Order of this Court.

6. A bond of One Thousand Dollars ($1,000.00) shall be posted by plaintiff and deposited with the Court of Common Pleas Philadelphia County's Office of Judicial Records, formerly known as the Prothonotary.[13]

On August 12, 2014, Wilson and Lyons appealed this court's order dated August 8, 2014 and docketed August 11, 2014. On August 13, 2014, Wilson and Lyons filed a motion requesting the court to stay the August 8, 2014 order pending appeal. On August 21, 2014, the motion to stay was denied. Thereafter, Wilson and Lyons filed a motion to stay with the Superior Court which was

---

13. In the Employment Agreement, Wilson waived the requirement for the posting of a bond in paragraph 8, however, the court imposed a bond as required by Pa. R. Civ. 1531(b) (1) and (2). This requirement is mandatory and an appellate court must invalidate a preliminary injunction if a bond is not filed by the plaintiff. *See Christo v. Tuscany, Inc.*, 308 Pa. Super. 564, 454 A.2d 1042 (1982).

ultimately denied on September 5, 2014.

For the reasons discussed below, the court's order dated August 8, 2014 should be affirmed.

## DISCUSSION

Restrictive covenants, of which non-disclosure and non-competition covenants are the most frequently utilized, are commonly relied upon by employers to shield their protectable business interests. The non-disclosure covenant limits the dissemination of proprietary information by a former employee, while the non-competition covenant precludes the former employee from competing with his prior employer for a specified period of time and within a precise geographic area.

In Pennsylvania, restrictive covenants are enforceable if they are incident to an employment relationship between the parties; the restrictions imposed by the covenant are reasonably necessary for the protection of the employer; and the restrictions imposed are reasonably limited in duration and geographic extent. Equitable enforcement of employee covenants not to compete is permitted in so far as reasonably necessary for the protection of the employer. However, restrictive covenants are not favored in Pennsylvania and have been historically viewed as a trade restraint that prevents a former employee from earning a living.[14] Thus, the "presence of a legitimate, protectable business interest of the employer is a threshold requirement for an enforceable non-competition covenant."[15]

---

14. *Hess v. Gebhard & Co.*, 570 Pa. 148, 808 A.2d 912, 917 (2002) (citations and quotation marks omitted). *See also, All-Pak, Inc. v. Johnston*, 694 A.2d 347, 350 (Pa.Super.1997) (citations omitted).
15. *WellSpan Health v. Bayliss*, 869 A.2d 990, 997 (Pa.Super.2005).

In the case sub judice, USI placed before the court the task of interpreting paragraph 6 of the Employment Agreement, specifically the Non Solicitation and Non Interference provision. Unlike traditional non-compete provisions, the Non Solicitation and Non Interference provision at issue here did not prohibit Wilson from competing with USI. Rather, this provision prohibits Wilson from soliciting and interfering with clients that had been with USI for two years prior to Wilson's departure from USI and for a period of two years after Wilsons' departure. Since Wilson is not prohibited from competing with USI, the Non Solicitation and Non Interference provision does not constitute a restraint on trade.

In light of the foregoing, the relevant question before this court was whether the equitable enforcement of the Non Solicitation and Non Interference provision was necessary to protect USI against wrongful appropriation of its customer relationships. In deciding the issue, this court balanced USI's interest in protecting the customer relationship along with the confidential information within Wilson's possession against Wilson's ability to earn a living in his chosen profession.

The record evidence shows that Wilson had access to a great deal of confidential and proprietary information belonging to USI. Wilson began working for USI on September 21, 2012 when his previous employer was acquired by USI.[16] At the time of the acquisition, Wilson provided services to clients which he claims were serviced by him for approximately twenty years. When Wilson

---

16. Wilson affidavit ¶ 2 attached as Exhibit "B" to Defendants' Response to plaintiff 's petition.

decided to leave USI to join Lyons, Wilson notified his long time clients that he would be leaving USI. Seven of the nine clients contacted Lyons and arranged to have their insurance business moved to Lyons.[17] Wilson's contacting of the clients as well as acceptance of the broker of record letters constitutes a breach of the Non Solicitation and Non Interference provision of the Employment Agreement. The Employment Agreement clearly and unambiguously prohibits Wilson from soliciting, selling or providing or accepting any request to provide services to, consult for, sign or accept a broker of record letter with Company Clients. The seven clients that ultimately left USI for Lyons after Wilson contacted them about his resignation were Company Clients. Wilson's longstanding relationship with these particular USI Company Clients caused him to be viewed as a leader in the industry, and USI has a legitimate business interest in ensuring that Wilson did not transfer that goodwill to Lyons, its direct competitor.

Wilson and Lyons argue that equitable relief was not necessary since USI has an adequate remedy at law in that it may sue for damages. This court did not agree. There are six "essential prerequisites" that a party must establish prior to obtaining preliminary injunctive relief. The party must show: 1) "that the injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages"; 2) "that greater injury would result from refusing an injunction than from granting it, and, concomitantly, that issuance of an injunction will not substantially harm

17. *Id.* ¶ 6.

other interested parties in the proceedings"; 3) "that a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct"; 4) "that the activity it seeks to restrain is actionable, that its right to relief is clear, and that the wrong is manifest, or, in other words, must show that it is likely to prevail on the merits"; 5) "that the injunction it seeks is reasonably suited to abate the offending activity"; and, 6) "that a preliminary injunction will not adversely affect the public interest."[18] While an injunction is an extraordinary remedy which should not issue if the parties may be adequately compensated by damages, the injury caused by Wilson and Lyons' violation of the non solicitation and non interference provision is particularly difficult to quantify for damage purposes.[19] Here, USI suffered irreparable harm from the departure of seven clients as well as Wilson's use of confidential and proprietary information to lure clients from USI to Lyons.

The clear balance of the equities weighs in favor of enforcing the Non Solicitation and Non Interference provision by entering the August 8, 2014 order. USI is likely to prevail on the merits based on Wilson's breach of the provision which is clear and unambiguous. Moreover, greater harm will result to USI if the requested relief was

---

18. *Warehime v. Warehime,* 580 Pa. 201, 209-10, 860 A.2d 41,46-47 (2004), *citing Summit Towne Centre, Inc. v. Shoe Show of Rocky Mount Inc.,* 573 Pa. 637, 828 A.2d 995, 1000 (2003).

19. As stated in *Schwartz v. Laundry & Linen Supply Drivers,* 339 Pa. 353, 14 A.2d 438 (1940): "The great weight of modern authority is to the effect that one who has been or will be injured [by violation of a covenant not to compete] is ordinarily entitled to the equitable remedy of injunction ...." The Pennsylvania Supreme Court has also stated that such covenants are prima facie enforceable in equity.

not entered than any harm to Wilson and Lyons. Wilson is not prohibited from working and earning a living and may compete with USI.

The order entered is suited to abate Lyons' acceptance of the broker of record letters and Wilson's solicitation, interference and use of confidential information. This court's order served to restore the status quo. Wilson was ordered to inform those clients that served broker of record letters to Lyons to either return to USI or locate another broker. The order preserves Wilson's reputation and ensures that the affected clients would be given a choice to return to USI or find another broker. Defendants argue that those clients that already transferred to Lyons should remain with Lyons since these clients made a choice to move to Lyons and therefore would be most affected by this court's order. However, defendants' suggestion does not preserve the status quo. USI paid $100 million for the acquisition of TD Bank insurance business and acquired the book of business including the seven clients that transferred their business to Lyons. The status quo is for the seven clients to return to USI. This court is not in a position to order these clients to return to USI and therefore the best and most reasonable solution is to provide the clients with a choice, return to USI or find another insurance broker. Allowing the clients to remain with Lyons only serves to excuse Wilson's breach of the Employment Agreement which was not privileged.

Based on the forgoing, this court's order dated August 8, 2014 should be affirmed.