J-S73041-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MARY MALINOWSKI, EXECUTRIX OF THE ESTATE OF STANLEY MALINOWSKI, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| EDWARD T. SWINNERTON, INDIVIDUALLY AND AS A GENERAL PARTNER OF T&R PAYMENT PROCESSING | : | |
| | : | No. 453 MDA 2019 |

Appeal from the Judgment Entered March 1, 2019
in the Court of Common Pleas of Luzerne County
Civil Division at No(s):  3263-C-2005

BEFORE:  SHOGAN, J., LAZARUS, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                **FILED MARCH 24, 2020**

Mary Malinowski, Executrix of the Estate of Stanley Malinowski ("the Estate"), appeals from the Judgment awarding the Estate $8,954.28, in the partnership dissolution case originally filed by the decedent, Stanley Malinowski ("Malinowski") against Edward T. Swinnerton ("Swinnerton").  We affirm.

The trial court set forth the Findings of Fact underlying the instant appeal, in relevant part, as follows:

> 4.  T&R [Payment Processing ("T&R")] was formed in 1997 as a general partnership between Malinowski and Swinnerton.  Both Malinowski and Swinnerton owned 50% [] of the partnership.
>
> 5.   There were no restrictive covenants executed by either Malinowski or Swinnerton in favor of T&R or each other.

6. A letter dated July 8, 2004 ("the Letter") was sent at the direction of Malinowski by Attorney Anthony Lupas to Swinnerton stating Malinowski's intent to retire.

7. The Letter was sent at Malinowski's direction to Swinnerton to "notify [Swinnerton] that he is retiring from the partnership of T&R [] … effective sixty (60) days from [Swinnerton's] receipt of this letter."

8. Swinnerton received the Letter sometime in July 2004.

9. T&R was in the business of selling credit card processing services to merchants.

10. T&R paid a commission to Malinowski and Swinnerton for equipment[-]related sales and leases. The commissions were based on actual sales and were not split evenly.

11. Swinnerton received $10,000 in commissions in 2004.

12. Residuals on credit and transactions received from the processing company or bank, as non-commissions, were split evenly between Malinowski and Swinnerton.

13. The partnership income in favor of Swinnerton for the year 2004 equaled $203,100. [FN1, FN2]

---

[FN1] Malinowski records this amount as $213,000, while Swinnerton records this amount as $203,000. The difference results from Malinowski's inclusion of $10,000 in commissions [that] Swinnerton earned in 2004. As the commissions were not included in the partnership's evenly[-]split profits, $203,000 is the proper principal income figure.

[FN2] The calculation breaks down as follows: $144,000 (Distributions to Swinnerton) - $11,000 (Distribution to Malinowski) + $236,000 (Guaranteed payments to Swinnerton) - $166,000 (Guaranteed payments to Malinowski).

---

14. In August 2003, Malinowski personally borrowed $360,000 from Fifth Third Bank [("the Fifth Third Loan")].

15.  The Fifth Third Loan was guaranteed by T&R.  The Fifth Third Loan payments were paid by automatic withdrawal[s] from the T&R account at the rate of $8,400 per month.

16.  Malinowski made no payments on the Fifth Third Loan and all payments were made by T&R or Swinnerton.

17.  T&R and Swinnerton's 2004 payments of the Fifth Third Loan debt totaled $100,800.

18.  Swinnerton owes Malinowski 50% (fifty percent) of his excess partnership income.

19.  Swinnerton charged expenses on an American Express card through T&R ("AMEX Card") that were personal expenses.

20.  Malinowski did not hold an American Express card that he used for business purposes.

21.  Swinnerton charged $71,208.84 on the AMEX Card in the year 2004.

22.  Swinnerton owes Malinowski 50% [] of his 2004 AMEX Card charges.

23.  Malinowski used the resources of the T&R call center for a real estate business that he operated apart from T&R.

24.  The parties agreed that Malinowski would pay Swinnerton 50% of the cost of operating the call center to account for Malinowski's real estate business.

25.  Both parties believe the value of Malinowski's use of the call center for the real estate business equals approximately $40,000.[FN3]

---

[FN3] Swinnerton provides the more specific number of $40,309. [The trial court] generally finds Malinowski less credible than Swinnerton.  Even so, Malinowski's assessment of the T&R call center usage value is an approximation close to the more specific value Swinnerton offers.

---

J-S73041-19

....

27. Swinnerton's year 2004 payment on the Fifth Third Loan, in the amount of $100,800, was already included in the year 2004 partnership income in favor of Swinnerton.

28. Both Malinowski and Swinnerton apply a 6% [] non-compounded interest rate to a 12.66[-]year period [in] their interest calculations.

29. Malinowski passed away on August 26, 2017, and his counsel subsequently filed a Praecipe to Amend Caption and Substitute Party on August 28, 2017[,] reflecting Mary Malinowski, Executrix of the Estate of Stanley Malinowski [(the Estate, Executrix and Malinowski are sometimes jointly referred to as "Malinowski")], as [p]laintiff for Stanley Malinowski, deceased.

Trial Court Opinion, 10/12/17, at 2-4.

On April 1, 2005, Malinowski filed a Civil Complaint alleging a dissolution of the partnership, and demanding an accounting. Swinnerton filed an Answer, New Matter and Counterclaim. Swinnerton's Counterclaim did not seek damages for the payments made on the Fifth Third Bank Loan by Swinnerton or T&R. At trial, Malinowski claimed $1,263,251.32 in damages from 2004 through 2006. Swinnerton counterclaimed for $228,895 for 2004 or, alternatively, $25,495 for 2005. On October 12, 2017, following a bench trial, the trial court entered an Opinion and Order awarding Malinowski $147,222.95. Swinnerton and Malinowski both filed post-trial Motions.

On July 25, 2018, following the scheduling and rescheduling of oral argument, the trial court entered an Amended Final Decision and Order ("the 2018 Order") awarding Malinowski $227,596.28. Swinnerton filed a Motion for Reconsideration/Clarification on August 8, 2018. The trial court granted

- 4 -

the Motion for Reconsideration/Clarification. Following a telephone conference with the parties, and upon further review of the record, the trial court entered an amended Memorandum and Order ("the Amended Order") awarding Malinowski $8,954.28. Following the entry of Judgment, Malinowski filed the instant timely appeal, followed by a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

Malinowski presents the following claims for our review:

[1.] Whether the [t]rial [c]ourt erred by refusing to allow [Malinowski] to testify [as] to the value of the partnership?

[2.] Whether the [trial c]ourt erred in allowing [Swinnerton] a[] $317,200.00 credit for personal expenses charged to the partnership?

[3.] Whether the [trial c]ourt erred in allowing loan payments made by the partnership to be deducted from [Malinowski's] share of partnership income[,] when the partnership accountant testified that all distributions made to the partners were "met" [as to] the loan payments?

[4.] Whether the [trial c]ourt erred in allowing [Swinnerton] to retain all of the partnership property and income for the year 2006 without surcharge?

Brief for Appellant at 4.

We begin our analysis with our standard of review. When reviewing an adjudication in equity,

"our standard of review is limited. We will reverse only where the trial court was palpably erroneous, misapplied the law or committed a manifest abuse of discretion. Where there are any apparently reasonable grounds for the trial court's decision, we must affirm it." **Viener v. Jacobs**, 834 A.2d 546, 554 (Pa. Super. 2003) (citations omitted). Moreover,

> The function of this Court on an appeal from an adjudication in equity is not to substitute [our] view for that of the lower tribunal; our task is rather to determine whether "a judicial mind, on due consideration of all the evidence, as a whole, could reasonably have reached the conclusion of that tribunal."

> *Hess v. Gebhard & Co., Inc*., 570 Pa. 148, 808 A.2d 912, 920 (2002) (quoting *Aiken Indus., Inc. v. Estate of Wilson*, 477 Pa. 34, 383 A.2d 808, 810 (1978)). … "When reviewing the results of a non-jury trial, we are bound by the trial court's findings of fact, unless those findings are not based on competent evidence." *Viener*, 834 A.2d at 554.

*Nebesho v. Brown*, 846 A.2d 721, 725-26 (Pa. Super. 2004).

Malinowski first claims that the trial court improperly refused to allow him to testify regarding the value of the partnership. Brief for Appellant at 16. Specifically, Malinowski argues that the trial court improperly disallowed him from testifying about the value of the partnership based upon Plaintiff's Exhibit 6, *i.e.*, the USB Buyout Report. *Id.* According to Malinowski, the USB Buyout Report summarized T&R's residuals for the relevant time period. *Id.* at 17. Malinowski directs our attention to his testimony regarding the methodology and information used to make the calculations set forth in Defendant's Exhibit 6, which include the monthly averages for the residuals. *Id.* at 17-18. However, when asked whether Plaintiff's Exhibit 6 accurately reflected the value of the residual stream of T&R during 2004, Swinnerton lodged an objection, which the trial court sustained. *Id.* at 20. Malinowski argues that the trial court improperly excluded this testimony, as an owner of property may testify regarding its value. *Id.* at 19-20. Malinowski contends

- 6 -

that, because he had testified regarding the methodology and information used in the calculations without objection, the trial court erred in excluding this testimony. *Id.* at 20.

In its Opinion, the trial court deemed this claim waived, based upon the misidentification of the exhibit number in the Pa.R.A.P. 1925(b) Concise Statement, and Malinowski's failure to identify where, in the record, Malinowski preserved this claim prior to filing the Concise Statement. Trial Court Opinion, 7/23/19, at 4. We agree with the sound reasoning of the trial court, and discern no error or abuse of discretion in this regard. We therefore affirm on the basis of the reasoning set forth in the trial court's Opinion with regard to this claim. *See id.* at 3-4.

Even if Malinowski had properly preserved this claim, we would conclude that it lacks merit. "Questions concerning the admissibility of evidence lie within the sound discretion of the trial court[.]" *Parr v. Ford Motor Co.*, 109 A.3d 682, 690 (Pa. Super. 2014) (*en banc*) (citation omitted). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." *Id.*

At trial, Malinowski testified that T&R received monthly reports from their present bank setting forth its "residuals." N.T., 6/29/17, at 143. Malinowski identified Plaintiff's Exhibit 8 as an actual residual report, and

Plaintiff's Exhibit 6 as a summary of Plaintiff's Exhibit 8. *Id.* at 143-44. Swinnerton's counsel objected to Malinowski's testimony regarding these documents as hearsay. *Id.* at 142-43. When Malinowki's counsel represented that he would lay a proper foundation for the testimony, the trial court permitted Malinowski to continue with his testimony regarding these exhibits. *Id.* at 144.

Relevant to our analysis, Malinowski testified that "Mike Jenrette" prepared Plaintiff's Exhibit 6. *Id.* After Malinowski testified regarding his personal knowledge of the certain accounts identified in Plaintiff's Exhibit 8, the following discussion transpired:

> Q. [Malinowski's counsel:] … [B]ased upon your experience with Credit Card Merchant Servicing and the reports that you would get from the sponsoring banks, **and specifically Plaintiff's Exhibit No. 6**, do you believe that that accurately reflects the value of the residual stream of T&R during the Summer of 2004?

*Id.* at 157 (emphasis added). At this time, Swinnerton's counsel objected, and the trial court sustained the objection. *Id.* at 157, 169. In particular, the trial court excluded the testimony based upon Pa.R.E. 701, which addresses opinion testimony by lay witnesses. *Id.* at 169. While we agree with the trial court's determination that the evidence was inadmissible, we would have affirmed the trial court's determination for a different reason. *See* **In re A.J.R.-H.**, 188 A.3d 1157, 1175-76 (Pa. 2018) (stating that the "right-for-any-reason" doctrine "allows an appellate court to affirm the trial court's decision on any basis that is supported by the record.").

Here, Malinowski sought to render an opinion regarding the accuracy of values assigned to the residual stream summarized in Plaintiff's Exhibit 6. *See* N.T., 6/29/17, at 160. However, the person who prepared that exhibit was not presented as a witness, and could not be cross-examined as to the methodology used to assign a value to the residual stream. Because the evidentiary value of Malinowski's valuation testimony rested not only upon his own credibility, but that of the person who prepared Plaintiff's Exhibit 6, Malinowski's testimony attesting to the accuracy of Exhibit 6 constituted impermissible hearsay. *See* Pa.R.E. 801(c) (defining hearsay as an out-of-court statement offered to prove the truth of the matter asserted). Our review further discloses that Malinowski failed to provide a sufficient basis to offset the hearsay character of this evidence. Consequently, we conclude that the trial court did not abuse its discretion by excluding this testimony.

In his second claim, Malinowski argues that the trial court improperly failed to surcharge Swinnerton with $317,200 in charges that Swinnerton made on the AMEX Card. Brief for Appellant at 21. Relying on the testimony of the partnership's accountant, Malinowski contends that the charges were not a "business expense," but a personal expenditure not deducted as a business expense…." *Id.* at 21-22. According to Malinowski, the testimony of the partnership's accountant was unequivocal that the charges were not a business expense, and that the presumption with regard to handling the

partnership's funds is against Swinnerton, as he had exclusive control of that property. *Id.* at 22.

In its Opinion, the trial court addressed this claim, and properly concluded that it lacks merit. *See* Trial Court Opinion, 7/23/19, at 4-5. We agree with the sound reasoning of the trial court, and affirm on this basis with regard to Malinowski's second claim.[1] *See id.*

In his third claim of error, Malinowski argues that the trial court improperly allowed Swinnerton to retain partnership property and profits without imposing a penalty or surcharge. Brief for Appellant at 22. Malinowski asserts that Swinnerton retained all of the partnership's property and income "after Malinowski was wrongfully excluded in 2004[.]" *Id.* at 24. According to Malinowski, Swinnerton then converted all of the T&R accounts by "rewriting them" into an entity controlled by Swinnerton, "B." *Id.* Malinowki cites only one legal authority to support his argument, our Supreme Court's decision in *Bracht v. Connell*, 170 A. 297 (Pa. 1933). According to Malinowski, Swinnerton wrongfully excluded Malinowski from partnership income, and Swinnerton breached his fiduciary duty to Malinowski. Brief for Appellant at 15. Malinowski claims that Swinnerton provided no information regarding the

---

[1] Our review of the record discloses no evidence presented at trial regarding individual charges on the AMEX Card, and whether those charges were personal or business expenses.

partnership, made no distributions to him, and provided him with no financial records regarding T&R. *Id.* at 15-16.

In its Opinion, the trial court addressed Malinowski's claim and concluded that it lacks merit. *See* Trial Court Opinion, 7/23/19, at 5-6. We affirm on the basis of the trial court's Opinion with regard to Malinowski's claim, with the following addendum. *See id.*

Our review of the record discloses that Malinowski ignores evidence regarding his own actions with T&R's property, which supports the trial court's determination not to impose a surcharge or penalty on Swinnerton. For example, Swinnerton testified at trial that, on November 30, 2004, he found that Malinowski had locked him out of T&R's call center in Pittston, Pennsylvania. N.T., 6/29/17, at 89. Upon gaining entrance to the facility, Swinnerton discovered that "[t]he office was vacant, empty that day, vacant of employees." *Id.* On the telemarketers' desks, Swinnerton discovered a marketing script soliciting business for Credit Card Merchant Services, a competing business owned and operated by Malinowski. *Id.* at 90. Further, Swinnerton found contracts indicating that Credit Card Merchant Services had employed T&R's employees from the T&R's call center.[2] *Id.* at 91. Swinnerton testified that, upon this discovery, he repeatedly and unsuccessfully

---

[2] The employees had tendered their resignations to Swinnerton sometime after signing employment contracts for Credit Card Merchant Services. *Id.* at 92.

- 11 -

attempted to reach Malinowski for an explanation. *Id.* at 93. Thus, the record reflects no abuse of the trial court's discretion in not assessing a surcharge or penalty on Swinnerton.

In his fourth claim, Malinowski argues that the trial court improperly deducted from its award certain Fifth Third Loan payments. Brief for Appellant at 24. Malinowski states that T&R never "wound up its partnership affairs." *Id.* at 26. According to Malinowski, "[l]oans[,] guaranteed payments and distributions made to the partners were net of the monies spent by the partnership for the repayment of loans that were made to the individual partners and guaranteed by the partnership." *Id.* at 27. Malinowski contends that, regarding any lack of clarity in this regard, "every presumption should be made against Swinnerton and in favor of Malinowski." *Id.* Malinowski also challenges the trial court's failure to award partnership income or property for the year 2006. *Id.* Malinowski contends that the earnings made by Swinnerton in 2006 came "exclusively from the accounts 'rewritten' by Swinnerton from T&R to Birchwood." *Id.*

In its Opinion, the trial court addressed Malinowski's claim and concluded that it lacks merit. *See* Trial Court Opinion, 7/23/19, at 6-8. We agree with the sound reasoning and conclusions reached by the trial court, as set forth in its Opinion, and affirm on this basis as to Malinowski's fourth claim of error. *See id.*

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 03/24/2020

MARY MALINOWSKI, Executrix of the     : IN THE COURT OF COMMON PLEAS
Estate of Stanley Malinowski,              :          OF LUZERNE COUNTY
                                      :
            Plaintiff                  :
                                        :
       vs.                       :       CIVIL ACTION – LAW
                                        :
EDWARD T. SWINNERTON              :
Individually and as a general partner     :
of T&R Payment Processing,           :
                                        :
          Defendant             : NO.           3263 of 2005

## **OPINION ISSUED PURSUANT TO PA.R.A.P. 1925(a)**

### I. Facts and Procedural Background

This case arises as the result of a dispute concerning profit and cost allocation between two business partners in a now-defunct business partnership. Stanley Malinowski ("Plaintiff") [1] and Edward Swinnerton ("Defendant") formed T&R Payment Processing ("T&R") in 1997 as an equal partnership. A bench trial was held before President Judge Richard M. Hughes, III of the Luzerne County Court of Common Pleas ("Court") on June 29, 2017 resulting in an Opinion and Order filed October 12, 2017 ("2017 Opinion and Order") that awarded Plaintiff $147,222.95 (One Hundred Forty Seven Thousand Two Hundred Twenty Two Dollars and Ninety Five Cents). Both Plaintiff and Defendant filed Post Trial Motions on November 10, 2017. Oral argument was scheduled, and, due to a weather delay, subsequently rescheduled to April 9, 2018. On July 25, 2018 this Court issued an Order ("2018 Order") including an Amended Final Decision awarding Plaintiff $277,596.28 (Two Hundred Seventy Seven Thousand Five Hundred Ninety Six Dollars and Twenty Eight Cents).

---

[1] Original Plaintiff Stanley Malinowski passed away subsequent to the bench trial and prior to a decision on the matter. Thereafter, Plaintiff became Mary Malinowski, Executrix of the Estate of Stanley Malinowski.

1

Defendant filed a Motion for Reconsideration/Clarification in response on August 8, 2018. This Court expressly granted the Motion for Reconsideration/Clarification on September 5, 2018, and held a telephone conference with the parties on September 26, 2018. Following the telephone conference this Court again embarked on a thorough review of the record, and took into account previous determinations as to credibility, resulting in a Memorandum and accompanying Order, both filed January 31, 2019 ("2019 Memorandum and Order"). The 2019 Memorandum and Order amends the Court's previous decision to reflect an award to Plaintiff in the amount of $8,954.28 (Eight Thousand Nine Hundred Fifty Four Dollars and Twenty Eight Cents).

Thereafter, Plaintiff filed an Appeal to the Superior Court of Pennsylvania on March 15, 2019. This Court filed an Order Pursuant to Pa. R.A.P. Rule 1925(b), Directing Appellant to File of Record a Statement of Errors Complained of on Appeal on March 26, 2019. Petitioner complied on April 23, 2019, filing a document entitled Petitioner's Statement of Matters Complained of Pursuant to Pa. R.A.P. 1925(a) on that date ("Statement of Errors").

Petitioner's Statement of Errors identifies four clear statements of error, and additionally a further claim that the Court did not consider proper evidence:

1. Disallowing Plaintiff's Proposed Value Testimony. The Court erred in not permitting the Plaintiff, Stanley Malinowski to testify to Plaintiff's Exhibit No. 7 which was the USB Buyout Report to provide testimony concerning his opinion of the value of T&R in 2004.

2. Allowing Deduction of American Express Expenses. The Court erred in not charging the Defendant, Swinnerton with $317,200.00 in charges made to the partnership on his American Express Account since the uncontradicted testimony of the partnership's

2

accountant was that it was not a *"business expense"* but instead a personal expenditure not deducted as a business expense.

3. Allowing Defendant to Retain Partnership Property and Profits Without Penalty or Surcharge.

4. Allowing Loan Payments to be Deducted. The Court erred in ignoring that the partnership accountant DePalantino admitted in his Trial Testimony that the loan payments could not be considered Damages owed to Swinnerton.

5. Plaintiff followed its fourth claim of error with a further claim that the Court did not properly consider Defendant's liability to Plaintiff for the years 2005 and beyond in light of the partnership's continuation through the winding up process pursuant to 15 Pa.C.S.A. §8336 and 15 Pa. C.S.A. §8352.

## II.   Legal Discussion

The General rule under Pa. R.A.P. 1925(a) entitled "Opinion in Support of Order" states:

> Except as otherwise prescribed by this rule, upon receipt of the notice of appeal, the judge who entered the order giving rise to the notice of appeal, **if the reasons for the order do not already appear of record**, shall forthwith file of record **at least a brief opinion** of the reasons for the order, or for the rulings or other errors complained of, **or shall specify in writing the place in the record where such reasons may be found.** (emphasis added)

Pursuant to Pa. R.A.P. 1925(b),

> If the judge entering the order giving rise to the notice of appeal ("judge") desires clarification of the errors complained of on appeal, the judge may enter an order directing the appellant to file of record in the trial court and serve on the judge a concise statement of the errors complained of on appeal ("Statement.").

> Pa. R.A.P. 1925(b)(ii) further states: "[t]he Statement shall concisely identify each ruling

or error that the appellant intends to challenge with sufficient detail to identify all pertinent

issues for the judge."

3

The Court cannot determine where in the record Plaintiff raised its first claim of error prior to the Statement of Errors. Plaintiff's first claim of error alleges that the Court "erred in not permitting the Plaintiff, Stanley Malinowski to testify to Plaintiff's Exhibit No. 7 which was the USB Buyout Report to provide testimony concerning his opinion of the value of T&R in 2004."[2] Near the end of the trial the Court admitted Plaintiff's Exhibits 1, 2, 5, 6, and 8. Transcript, p. 210-14. However, a review of the transcript does not disclose where the Court prevented Plaintiff from testifying to proposed Plaintiff's Exhibit No. 7 nor where Plaintiff objected. "'Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.' Pa. R.A.P. 302(a) . . . 'A Rule 1925(b) statement of matters complained of on appeal is not a vehicle in which issues not previously asserted may be raised for the first time.'" *Hinkal v. Pardoe*, 133 A.2d 738, 746 (Pa. Super. 2016). An inability of the Court to determine where Plaintiff previously raised this issue is fatal to its claim of error. A lack of identification where in the record the Court committed the alleged error, and by extension failing to show where Plaintiff previously objected to the Court's alleged error, defeats Plaintiff's first claim of error.

Plaintiff's second claim of error misidentifies the crux of the American Express argument. Plaintiff alleges that the Court erred in not charging the Defendant, Swinnerton with $317,200.00 in charges made to the partnership on his American Express Account since the uncontradicted testimony of the partnership's accountant was that it was not a *business expense* but instead a personal expenditure not deducted as a business expense. The witness at issue, Albert J. DePalantino ("DePalantino"), is a CPA licensed in Pennsylvania who does tax and accounting work for Defendant Swinnerton and has done tax and accounting work for T&R.

---

[2] Rather than the USB Buyout Report, a review of the documents reveals that Plaintiff's Exhibit No. 7 consists of a letter from Defense Counsel to Raymond P. Wendolowski, Esquire dated August 11, 2006 and various attached documents. The included pages are stamped P – 7.001 through P – 7.010.

4

Transcript, p. 222-23. Plaintiff correctly points out that DePalantino agrees Defendant's American Express charges are personal instead of business expenses. Transcript, p. 243-44. Whether those charges are identified as business or personal is quite beside the point at issue. The question is whether, if the charges were personal, they were also built back into Defendant's income on his tax reporting. On this issue DePalantino indicates Defendant already included the American Express charges on his income, stating "correct" on redirect when asked whether if the "entire $71,000 was personal to Mr. Swinnerton, would your process then be to put it into his income?" Transcript, p. 245. On cross examination regarding the same issue, DePalantino is ambiguous, responding "[i]t might have been added back in there. I don't know without looking at these documents." Transcript, p. 245. At best, DePalantino's ambiguity on cross examination still fails to meet Plaintiff's burden of proof.[3]

Plaintiff's third claim of error wholly ignores the calculations this Court detailed in the 2019 Memorandum and Order. Plaintiff claims that the Court allowed Defendant to retain partnership property and profits without penalty or surcharge. Plaintiff then chronologically expounds Defendant's complete control of T&R Assets through 2006 and claims that Defendant never accounted for Plaintiff's portion of the T&R Assets except payments on Plaintiff's loan guaranteed by the partnership. To the extent that Plaintiff recites factual statements in its third claim of error, this Court concurs. However, the implication that this Court failed to disgorge Defendant of T&R assets he kept that were owed to Plaintiff incorrectly interprets this Court's rulings. Starting with the 2017 Opinion and Order, this Court always accounted for claims of

---

[3] The facially confusing nature of DePalantino's testimony led the Court to initially include the American Express charges in its damages calculations. See 2017 Opinion and Order. However, the Court later granted Defendant's second motion for post-trial relief, reversing its inclusion of the American Express charges from damages calculations. See the 2018 Order, Para. 4. This reversal came following another careful review of DePalantino's testimony and a determination that, at best, its ambiguity prevented Plaintiff from meeting its burden.

5

both parties to the T&R assets when determining damages. The Court's most recent 2019 Memorandum and Order explained its mathematical calculations in painstakingly detailed footnotes.[4] Regarding the failure of Defendant to supply Plaintiff with any T&R Assets for the year 2006:

"The Court ultimately determines that Plaintiff is unable to prove beyond speculation the actual amounts of Partnership Income from T&R Processing in 2006. Defendant admits that he began rewriting T&R accounts into Beechwood accounts in December 2005, and converting them in August 2006. The entire conversion process was complete by December 2006. (Transcript, p. 97). It is apparent to the Court that T&R generated an undetermined amount of Partnership Income in 2006. However, Plaintiff is unable to meet his burden of establishing that amount beyond mere speculation. (Transcript, p. 196)." 2019 Memorandum and Opinion, Memorandum footnote 2.

Plaintiff's fourth claim of error appears to mistakenly believe the Court calculated loan repayment damages for Defendant. Plaintiff alleges the Court erred in ignoring that the partnership accountant DePalantino admitted in his trial testimony that the loan repayments could not be considered damages owed to Swinnerton. Plaintiff then proceeds to cite to a number of transcript passages identifying the loan repayments as already included in their income under guaranteed payments. A review of this Court's rulings reveals that for the years 2004 and 2005 the Court only considered the loan repayments as part of the partnership income and built those damages into the partnership income calculations. 2019 Memorandum and Opinion, Memorandum footnotes 6-7. That approach conforms to the testimony of DePalantino

---

[4] See the Memorandum filed January 31, 2019.

cited in Plaintiff's Statement of Errors. Regarding years 2006 and 2007, the Court treated the loan repayments as standalone figures and calculated them individually as part of damages. 2019 Memorandum and Opinion, Memorandum footnotes 6-7, 9-10. DePalantino's testimony cited in the Statement of Errors confirms that loan repayments in year 2007 went into Beechwood, and as explained above starting with year 2006 this Court cannot calculate T&R partnership income beyond mere speculation. As such, the Court could not calculate loan repayments as part of partnership income, and instead the Court calculated loan repayment for the years 2006 and 2007 as standalone figures.

Finally, Plaintiff appears to follow his fourth claim of error with a further unidentified claim of error resting upon the position that the Court should have considered partnership income beyond year 2004 because T&R never wound up its affairs. Pursuant to 15 Pa. C.S.A. §8352[5] and 15 Pa. C.S.A. §8336,[6] the rights and duties of a partnership continue following dissolution until the partnership is wound up. The Court initially only considered the partnership income for 2004 on the finding that T&R dissolved that year. 2017 Opinion and Order, Opinion Conclusion of Law No. 1. The Court did not initially rely upon sections 8352 and 8336 because they were repealed prior to the bench trial. The Court reversed that ruling upon reconsideration in the 2018 Order based upon 101 Pa. Code §13.155(b). 2018 Order, footnote 1. As discussed repeatedly above, the Court could not calculate partnership income for the years 2006 and beyond without engaging in speculation. Plaintiff failed to meet its evidentiary burden allowing the Court to

---

[5] On dissolution, the partnership is not terminated but continues until the winding up of partnership affairs is completed. 15 Pa. C.S.A. §8352.

[6] (a) When a partnership for a fixed term or particular undertaking is continued after the termination of that term or particular undertaking without any express agreement, the rights and duties of the partners remain the same as they were at such termination so far as is consistent with a partnership at will. (b) A continuation of the business by the partners or such of them as habitually acted therein during the term, without any settlement or liquidation of the partnership affairs, is prima facie evidence of a continuation of the partnership. 15 Pa. C.S.A. §8336.

make such a calculation for those years. A suggestion that the Court concluded the Defendant's liability to Plaintiff terminated after 2005 is plainly wrong: "It is apparent to the Court that T&R generated an undetermined amount of Partnership Income in 2006. However, Plaintiff is unable to meet his burden of establishing that amount beyond mere speculation. (Transcript, p. 196)." 2019 Memorandum and Order, Memorandum footnote 2. Based upon sections 8352 and 8336, through section 13.155(b), the Court did consider partnership income beyond the year 2004, but only for 2005 because based upon the evidence presented the Court could not make a calculation of partnership income for years 2006 and beyond.

### Conclusion

For the foregoing reasons, this Court ruled in favor of Plaintiff and against Defendant in the amount of $8,954.28 (Eight Thousand Nine Hundred Fifty Four Dollars and Twenty Eight Cents). The Court further refers to its October 12, 2017 Opinion and Order; July 25, 2018 Order; and January 31, 2019 Memorandum and Order in this matter in response to the Concise Statement of Errors Complained of on Appeal.

The Office of Judicial Records (Prothonotary) is directed to enter this Opinion of record, and transmit the record to the Prothonotary of the Superior Court of Pennsylvania.

BY THE COURT:

_____
RICHARD M. HUGHES, III, P.J.

Copies sent via U.S. Mail:

Michael R. Mey, Esquire
1144 E. Drinker Street
Dunmore, PA 18512

8

Walter T. Grabowski, Esquire
61 N. Washington Street
Wilkes-Barre, PA  18701

Jeffrey S. Adler, Esquire
1001 Conshohocken State Rd.
West Conshohocken, PA  19428