J-A06006-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| WELLS FARGO INSURANCE SERVICES, USA, INC., | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 79 WDA 2022 |
| EDGEWOOD PARTNERS INSURANCE CENTER, SEAN ANDREAS, ZACHARY MENDELSON, CHARLES YORIO, PHILLIP WAKIM, JANICE ZEWE, SALLY KRAUSS, KURT KARSTENS AND PETER KOSTORICK | : | |

Appeal from the Order Entered December 13, 2021
In the Court of Common Pleas of Allegheny County Civil Division at
No(s): GD-17-14022

BEFORE:   OLSON, J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY OLSON, J.:                **FILED: NOVEMBER 21, 2023**

Appellant, Wells Fargo Insurance Services, USA, Inc. ("WFIS") appeals from the order entered on December 13, 2021, which granted the motion for summary judgment filed on behalf of defendants Edgewood Partners Insurance Center ("EPIC" or "Defendant EPIC"), Sean Andreas, Zachary Mendelson, Charles Yorio, Phillip Wakim, Janice Zewe, Sally Krauss, Kurt Karstens, and Peter Kostorick (hereinafter, collectively, "the Defendants"). Respectfully, we vacate and remand.

_____

[*] Retired Senior Judge assigned to the Superior Court.

On October 13, 2017, WFIS filed a complaint against the Defendants. Within the complaint, WFIS alleged it is an insurance agency that "provid[es] insurance products and services that are unique to the particular needs and specifications of its customers." WFIS Complaint, 10/3/17, at ¶ 33. Defendant EPIC is also an insurance agency and is in direct competition with WFIS. *See id.* at ¶ 83. Sean Andreas, Zachary Mendelson, Charles Yorio, Phillip Wakim, Janice Zewe, Sally Krauss, Kurt Karstens, and Peter Kostorick (hereinafter, collectively, "the Individual Defendants") "are all former WFIS sales executives, account executives, claims advisors, control managers or transactional employees." *Id.* at ¶ 2. According to the complaint, each Individual Defendant signed an employment agreement with WFIS and each employment agreement contained restrictive covenants, which forbade the Individual Defendants from soliciting WFIS's employees and clients or disclosing WFIS's confidential information and trade secrets. *See*, *e.g.*, *id.* at ¶¶ 2 and 53-55.

In the summer of 2017, while the Individual Defendants were employed by WFIS, each "Individual [Defendant] received an offer [of employment] from EPIC whereby EPIC would hire the Individual Defendants [to] start an EPIC Pittsburgh Office." *Id.* at ¶ 6. According to the complaint, the "Individual Defendants conspired to arrange for a departure [from WFIS] *en masse* and then, on September 27, 2017, they collectively notified WFIS of their resignations. WFIS was subsequently notified of additional resignations on September 28, 2017, Octoer 2, 2017, and October 3, 2017." *Id.* at ¶ 12.

- 2 -

The Individual Defendants then joined the employ of EPIC. The complaint further alleged:

> As of the filing of this Complaint, the Individual Defendants and EPIC have hired roughly 25% of WFIS's Pittsburgh employees who served over $4-5 million in client revenue. WFIS has received numerous notices from clients who have sent in their "Broker of Record" letters, indicating that they are taking their business away from WFIS and moving it to EPIC. The Defendants' acceptance of this business violates the Individual Defendants' agreements. In addition, WFIS has been informed and found evidence that several of the Individual Defendants – on behalf of EPIC – have solicited WFIS's clients. Given their conduct to date, it is more than likely that the Defendants intend to directly solicit more WFIS clients in violation of their Agreements and in contravention of their duties and common law.

*Id.* at ¶ 15.

WFIS's complaint contained seven counts: 1) a request for permanent injunctive relief against the Defendants; 2) tortious interference with contractual relations against the Defendants; 3) breach of contract against the Individual Defendants; 4) breach of fiduciary duty against the Individual Defendants; 5) breach of the implied covenant of good faith and fair dealing against the Individual Defendants; 6) civil conspiracy against the Defendants; and, 7) unfair competition against the Defendants. *See id.* at ¶¶ 148-195.

On April 3, 2018, after a hearing, the trial court denied WFIS's request for injunctive relief. Trial Court Order, 4/3/18, at 1. We affirmed the trial court's order on October 25, 2019. *WFIS v. EPIC*, 222 A.3d 873 (Pa. Super. 2019) (non-precedential decision) at \*\*1-6.

On September 28, 2018, the Defendants filed a motion for summary judgment. Within the motion, the Defendants claimed that WFIS's complaint must be dismissed because, after WFIS filed its complaint, WFIS was sold to a new parent company, USI Insurance Services ("USI"). The Defendants' Motion for Summary Judgment, 9/28/18, at ¶ 2. According to the Defendants, "[t]he transaction documents governing [WFIS's] sale to USI provide[] that WFIS was leaving the insurance business and WFIS agreed and covenanted that it would not re-enter into the insurance business." *Id.* at ¶ 3. Therefore, the Defendants claimed, since "WFIS exited the insurance business and promised USI it would not return," WFIS could not enforce the restrictive covenants in the employment contracts, as WFIS no longer held a legitimate business interest that required protection. *Id.* at ¶ 9.

WFIS responded that the Defendants' motion should be denied, as it disregarded WFIS's own corporate identity and misread the relevant "transaction documents governing [WFIS's] sale to USI." *See* WFIS's Response in Opposition, 11/13/18, at ¶ 8.

As WFIS clarified, when it filed its complaint in October 2017, it was an incorporated entity that was wholly owned by ACO Brokerage Holdings Corporation ("ACO"). ACO was, in turn, wholly owned by Wells Fargo & Company ("Wells Fargo"). *See* WFIS's Memorandum in Opposition, 11/13/18, at 3. According to WFIS, on November 30, 2017, Wells Fargo sold its interest in ACO to USI. The sale was accomplished through a Stock Purchase Agreement between Wells Fargo and USI ("Stock Purchase Agreement"),

where Wells Fargo agreed to sell, and USI agreed to buy, "all of the issued and outstanding shares of common stock" of ACO. Stock Purchase Agreement, 6/26/17, at "Whereas" Clause. As a result, USI became the new owner of WFIS – and, following the sale, WFIS then changed its name to "USI Insurance Services National, Inc." *Id.*

Regarding the Stock Purchase Agreement between Wells Fargo and USI, Wells Fargo agreed to the following:

> For a period of three (3) years after the Closing Date, [Wells Fargo] shall not, and shall cause its Affiliates to not, solicit or accept as a customer for the placement of any Business Products currently provided by the Business any current holder (or Person who within the past twelve (12) months has been a holder) of such a policy in connection with the Business (including any Customer that is or has been a holder of a policy); provided, that this Section 5.5(a) shall not prohibit incidental sales of Business Products by employees of the Personal Insurance Group of Seller, Wells Fargo Investment Management and the Wells Fargo life reinsurance business.

Stock Purchase Agreement, 6/26/17, at § 5.5(a).

The Stock Purchase Agreement defined the term "Affiliate" in the following manner:

> "Affiliate" shall mean, with respect to any specified Person, any other Person controlling or controlled by or under common control with such specified Person. For the purposes of this definition, "control" when used with respect to any specified Person means the power to direct the management and policies of such Person, directly or indirectly, whether through the ownership of voting securities, by contract or otherwise; and the terms "controlling" and "controlled" have meanings correlative to the foregoing.

- 5 -

*Id.* at § 1.1. Further, the Stock Purchase Agreement declared that the term "Business Products" means: "(i) property and casualty insurance policies and related products and services and (ii) employee benefits insurance policies and related products and services." *Id.*

WFIS argued that "the legal entity known as WFIS was and remains a commercial insurance broker business with offices across the United States" and that it merely changed its name to USI Insurance Services National. WFIS's Memorandum in Opposition, 11/13/18, at 3 (emphasis omitted). Thus, WFIS argued, it still has a protectable business interest in this matter and has standing to enforce the restrictive covenants contained in the employment agreements. *Id.* Further, WFIS argued, "[i]t was Wells Fargo, not WFIS, that left the commercial insurance brokerage business when it sold its shares of ACO to USI." *Id.* at 4 (emphasis omitted). However, "Wells Fargo and WFIS are, and always were, two separate and distinct corporate entities engaged in separate and distinct businesses." *Id.*

On December 14, 2021, the trial court granted the Defendants' motion for summary judgment and dismissed all claims against the Defendants with prejudice. Trial Court Order, 12/14/21, at 1. WFIS filed a timely notice of appeal and the trial court ordered WFIS to file a concise statement of errors complained of on appeal, pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). The trial court then filed its opinion in this matter. Within its opinion, the trial court explained that it granted the Defendants' motion for two reasons: 1) within the Stock Purchase Agreement, "WFIS agreed to no

longer operate in the insurance business" and, thus, "WFIS no longer had a viable interest for it to protect" and 2) WFIS "failed to provide the [trial court] with sufficient evidence to show that EPIC or the Individual Defendants were ever in derogation of the arguably overbroad restrictive covenants." Trial Court Opinion, 8/18/22, at 7.

WFIS raises two claims on appeal:

> 1. Whether the trial court erred as a matter of law in granting Defendants' motion for summary judgment and holding that [WFIS] lacked standing because it did not have a protectable business interest in the [Individual] Defendants' employment agreements' restrictive covenants?
>
> 2. Whether the trial court erred as a matter of law in granting Defendants' motion for summary judgment based on a lack of evidence showing solicitation by the [Individual Defendants] where Defendants did not move for summary judgment on that basis and where discovery was ongoing, and [WFIS] had not been given the opportunity to fully develop a record to support its claims?

WFIS's Brief at 4 (some capitalization omitted).

"The trial court's entry of summary judgment presents a question of law, and therefore our standard of review is *de novo* and our scope of review is plenary." *Branton v. Nicholas Meat, LLC*, 159 A.3d 540, 545 (Pa. Super. 2017) (citation omitted). "A motion for summary judgment is based on an evidentiary record that entitles the moving party to a judgment as a matter of law." *Yenchi v. Ameriprise Fin., Inc.*, 161 A.3d 811, 818 (Pa. 2017) (citation omitted). "In considering a motion for summary judgment, a court views the evidence in the light most favorable to the non-moving party, and

all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." ***Green v. Pennsylvania Prop. & Cas. Ins. Guar. Ass'n***, 158 A.3d 653, 658 (Pa. Super. 2017) (citation omitted). "When the facts are so clear that reasonable minds cannot differ, a trial court may properly enter summary judgment." ***Brown v. Everett Cash Mut. Ins. Co.***, 157 A.3d 958, 962 (Pa. Super. 2017) (citation omitted).

First, WFIS claims that the trial court erred when it granted the Defendants' motion for summary judgment on the ground that WFIS did not have a protectable business interest and, thus, could not enforce the restrictive covenants contained within the Individual Defendants' employment agreements. ***See*** WFIS's Brief at 23.

"Restrictive covenants . . . are commonly relied upon by employers to shield their protectible business interests." ***Hess v. Gebhard & Co. Inc.***, 808 A.2d 912, 917 (Pa. 2002). The two restrictive covenants at issue here are the covenants of non-disclosure and non-solicitation. Broadly stated, "[t]he non-disclosure covenant limits the dissemination of proprietary information by a former employee," while the non-solicitation covenant "prohibit[s] departing employees from soliciting the employer's other employees or customers to engage in a competing enterprise." ***See Hess***, 808 A.2d at 917; 11 WEST'S PA. FORMS, Employment Law § 9.1.

"In Pennsylvania, restrictive covenants are enforceable if they are incident to an employment relationship between the parties; the restrictions imposed by the covenant are reasonably necessary for the protection of the

employer; and the restrictions imposed are reasonably limited in duration and geographic extent." *Hess*, 808 A.2d at 917. "However, restrictive covenants are not favored in Pennsylvania and have been historically viewed as a trade restraint that prevents a former employee from earning a living." *Id.* Therefore, Pennsylvania requires, "at a minimum, that such contracts be reasonably related to the protection of a legitimate business interest" to be enforceable. *Id.* at 918. In other words, "[t]he presence of a legitimate, protectable business interest of the employer is a threshold requirement for an enforceable" restrictive covenant. *WellSpan Health v. Bayliss*, 869 A.2d 990, 997 (Pa. Super. 2005). Further, as our Supreme Court has held, where a company leaves an entire arena of business, the company no longer retains a legally protectable business interest in that arena – and, thus, the company may not enforce restrictive covenants related solely to that business arena. *See Hess*, 808 A.2d at 924 (holding: "because [the former employer] has sold the insurance accounts and is no longer in the insurance business, [the former employer] has no legally protectible business interest in those insurance accounts. Without a protectible business interest, [the former employer] may not enforce the covenant not to compete").

Within their motion for summary judgment, the Defendants claimed that "[t]he transaction documents governing [WFIS's] sale to USI provide[] that WFIS was leaving the insurance business and WFIS agreed and covenanted that it would not re-enter into the insurance business." The Defendants' Motion for Summary Judgment, 9/28/18, at ¶ 3. Therefore, the Defendants

claimed, since "WFIS exited the insurance business and promised USI it would not return," WFIS could not enforce the restrictive covenants in the employment contracts, as WFIS no longer has a legitimate business interest that required continued protection. *Id.* at ¶ 9.

The trial court granted the Defendants' motion, in part, upon the above-raised ground. *See* Trial Court Opinion, 8/18/22, at 7. On appeal, WFIS claims that the trial court erred when it granted the Defendants' motion because WFIS never left the commercial insurance business; instead, under the Stock Purchase Agreement, it was Well Fargo who agreed to exit the business. *See* WFIS's Brief at 23-33. We agree with WFIS.

Contract construction and interpretation present questions of law, over which our standard of review is *de novo*. ***See Pops PCE TT, LP v. R&R Rest. Group, LLC***, 208 A.3d 79, 87 (Pa. Super. 2019). "When the words of a[ contractual] agreement are clear and unambiguous, the intent of the parties is to be ascertained from the language used in the agreement, . . . which will be given its commonly accepted and plain meaning." ***LJL Transp., Inc. v. Pilot Air Freight Corp.***, 962 A.2d 639, 647 (Pa. 2009) (citations omitted).

The Stock Purchase Agreement at issue in this case was entered into between Wells Fargo and USI. Within the agreement, the parties acknowledged: that Wells Fargo owned "all of the issued and outstanding shares of common stock of ACO;" that ACO owns "all of the issued and outstanding equity interests of" WFIS; and, that the purpose of the agreement

was for Wells Fargo to sell the common shares of ACO to USI.  Stock Purchase

Agreement, 6/26/17, at "Whereas" Clauses.

Section 5.5 of the agreement, entitled  "non-solicitation," provides, in

relevant part:

> (a) For a period of three (3) years after the Closing Date, [Wells Fargo] shall not, and shall cause its Affiliates to not, solicit or accept as a customer for the placement of any Business Products currently provided by the Business any current holder (or Person who within the past twelve (12) months has been a holder) of such a policy in connection with the Business (including any Customer that is or has been a holder of a policy).
>
> . . .
>
> (d) For the avoidance of doubt, this Section 5.5 shall cease to apply to any Person from and after the date that such Person ceases to be an Affiliate of [Wells Fargo].  . . .

*Id.* at § 5.5(a) and (d) (emphasis omitted).

As summarized above, the Stock Purchase Agreement defined the term

"Affiliate" in the following manner:

> "Affiliate" shall mean, with respect to any specified Person, any other Person controlling or controlled by or under common control with such specified Person.  For the purposes of this definition, "control" when used with respect to any specified Person means the power to direct the management and policies of such Person, directly or indirectly, whether through the ownership of voting securities, by contract or otherwise; and the terms "controlling" and "controlled" have meanings correlative to the foregoing.

*Id.* at § 1.1.  The Stock Purchase Agreement then declared that the term

"Business Products" means:  "(i) property and casualty insurance policies and

related products and services and (ii) employee benefits insurance policies and related products and services." ***Id.***

Under the plain terms of Section 5.5, Wells Fargo agreed to exit the commercial insurance business for a term of three years "after the Closing Date" of the agreement and further agreed that, during this time, it would "cause its Affiliates" to also leave the commercial insurance business. ***See id.*** at ¶ 5.5(a). Put differently, pursuant to the language of the Stock Purchase Agreement, Wells Fargo (and Wells Fargo/Affiliates alone), owing to the transfer of its ownership stake in ACO to USI, surrendered its right to participate in the commercial insurance business for three years after the Closing Date of the parties' transaction. Section 5.5 does not apply to WFIS, as WFIS is an independent legal entity and, "after the Closing Date," WFIS was no longer an "affiliate" of Wells Fargo, as it was no longer "controlled by" Wells Fargo. ***See id.*** at §§ 1.1 and 5.5(a) and (d). Indeed, since ACO owned WFIS prior to the Closing Date – and since, under the Stock Purchase Agreement, Wells Fargo sold ACO to USI – USI owned WFIS "after the Closing Date" of the agreement. Hence, under the plain terms of the Stock Purchase Agreement, WFIS did not agree to leave the commercial insurance business. Instead, it was Wells Fargo and any entities that were "controlled by" Wells Fargo **after the Closing Date** that agreed to leave the commercial insurance business. USI's acquisition of WFIS would make little commercial sense if, at the conclusion of the transaction, Section 5.5 contemplated that WFIS, in addition to Wells Fargo, would leave the commercial insurance business.

Indeed, the Defendants' opposing interpretation of Section 5.5 is simply untenable, as the plain language of the Section declares that Wells Fargo agreed to "cause its Affiliates" to leave the commercial insurance business after the Closing Date; however, after the Closing Date of the Stock Purchase Agreement, Wells Fargo no longer owned WFIS, Wells Fargo no longer had control over WFIS, and, thus, Wells Fargo could not "cause" WFIS to do anything.

Therefore, we respectfully conclude that the trial court erred when it granted the Defendants' motion for summary judgment on the ground that, within the Stock Purchase Agreement, "WFIS agreed to no longer operate in the insurance business" and, thus, "WFIS no longer had a viable interest for it to protect." **See** Trial Court Opinion, 8/18/22, at 7.

Next, WFIS claims that the trial court erred when it granted the Defendants' summary judgment motion on the ground that WFIS "failed to provide the [trial court] with sufficient evidence to show that EPIC or the Individual Defendants were ever in derogation of the arguably overbroad restrictive covenants." **See id.** According to WFIS, the trial court erred when it granted summary judgment on this ground, as the Defendants did not raise the claim in their summary judgment motion.[1] WFIS's Brief at 34. We again agree with WFIS.

_____

[1] The Defendants contend that WFIS waived this claim on appeal, as it was not contained in WFIS's statement of matters complained of on appeal. **See** *(Footnote Continued Next Page)*

The Defendants' motion for summary judgment raised one ground for relief. The Defendants claimed that, under the Stock Purchase Agreement, WFIS agreed to "leav[e] the insurance business and WFIS agreed and covenanted that it would not re-enter into the insurance business." The Defendants' Motion for Summary Judgment, 9/28/18, at ¶¶ 3-4. Therefore, the Defendants claimed, they were entitled to summary judgment because WFIS no longer had a legally protectable business interest and, thus, could not enforce the restrictive covenants at issue in this case. *Id.* at ¶ 9. In relevant part, the Defendants' motion declares:

> 3. The transaction documents governing [WFIS's] sale to USI provides that WFIS was leaving the insurance business and WFIS agreed and covenanted that it would not re-enter into the insurance business.

_____

The Defendants' Brief at 38. There is no wavier in this case, as WFIS did not have an opportunity to raise the issue in its concise statement. To be sure, when the trial court granted the Defendants' motion for summary judgment, it did so in an order that did not provide an underlying basis for its reasoning. Trial Court Order, 12/14/21, at 1. WFIS then filed a timely notice of appeal and the trial court ordered WFIS to file a concise statement of errors complained of on appeal. Trial Court Order, 1/12/22, at 1. Only after WFIS filed its concise statement did the trial court file an opinion and explain that it granted summary judgment on the ground that WFIS "failed to provide the [trial court] with sufficient evidence to show that EPIC or the Individual Defendants were ever in derogation of the arguably overbroad restrictive covenants." Trial Court Opinion, 8/18/22, at 7. Therefore, since WFIS did not have an opportunity to raise this claim of error until it filed its brief to this Court, the claim is not waived. *See Riverview Carpet & Flooring, Inc. v. Presbyterian SeniorCare*, 299 A.3d 937, 980 n.32 (Pa. Super. 2023) (holding: even though the appellant did not raise a particular claim in its Rule 1925(b) statement, the claim was not waived on appeal because "the trial court did not provide a legal basis for [its order] until its Rule 1925(a) opinion").

4. Because WFIS exited the insurance business and promised USI it would not return, [the trial court] denied [WFIS's] request for preliminary injunction.

5. In [the order denying WFIS's request for injunctive relief, the trial court] found that:

> In May of 2017, Wells Fargo announced that it was exiting the insurance brokerage business;
>
> USI won the auction to purchase[] WFIS;
>
> The WFIS/USI purchase agreement "include[d] restrictive covenants incident to the sale of business precluding Wells Fargo from soliciting or competing with their former clients after the sale of WFIS to USI";
>
> WFIS "failed to show a clear protectable interest as a result of the WFIS/USI purchase agreement that included restrictive covenants incident to the sale of business precluding Wells Fargo from operating in the same insurance brokerage business as USI";
>
> Wells Fargo will be out of the insurance brokerage business after selling WFIS to USI; and
>
> WFIS no longer has a protectable interest after being sold to USI.

6. In that same order, [the trial court] stated that "due to the fact that WFIS cannot do business with its former clients after handing them over to USI, it would be improper to enjoin the Defendants from doing so."

. . .

8. As [WFIS's] entire complaint is predicated on the same protectable interest [the trial court] has already found is, as a matter of law, absent, Defendants are entitled to judgment in their favor under Pennsylvania Rule of Civil Procedure 1035.2.

9. Under Pennsylvania law, a party cannot enforce restrictive covenants in employment agreements without a recognizable protectable interest. *See Hess*[, 808 A.2d at 924].

10. Because WFIS has no protectable interest, WFIS also does not have standing. . . .

The Defendants' Motion for Summary Judgment, 9/28/18, at 2-3 (some citations and brackets omitted).

As explained above, the trial court not only granted summary judgment upon the above-raise claim, but it also granted summary judgment on the un-raised claim that WFIS "failed to provide the [trial court] with sufficient evidence to show that EPIC or the Individual Defendants were ever in derogation of the arguably overbroad restrictive covenants." *See* Trial Court Opinion, 8/18/22, at 7. Respectfully, this was error.

As the Pennsylvania Supreme Court has explained:

> granting summary judgment on an issue raised *sua sponte* is inappropriate. . . . This principle is well established in the Superior and Commonwealth Courts. *See*, *e.g.*, *MacGregor v. Mediq, Inc.*, 576 A.2d 1123 (Pa. Super. 1990); *Wojciechowski v. Murray*, 497 A.2d 1342 (Pa. Super. 1985); *O'Hare v. County of Northampton*, 782 A.2d 7 (Pa. Cmwlth. 2001); *Travers v. Cameron County Sch. Dist.*, 544 A.2d 547 (Pa. Cmwlth. 1988). These cases are grounded in a concern that trial courts should not "act as the defendant's advocate." For a trial court to raise an argument in favor of summary judgment *sua sponte* and grant summary judgment thereon risks depriving the court the benefit of advocacy on the issue, and depriving the parties the opportunity to be heard. *See Luitweiler v. Northchester Corp.*, 319 A.2d 899, 901 n. 5 (1974) (holding it inappropriate for trial court to raise failure to state claim upon which relief may be granted *sua sponte*).

***Yount v. Pennsylvania Dep't of Corr.***, 966 A.2d 1115, 1119 (Pa. 2009) (some citations omitted).

Here, the trial court erred when it granted the Defendants summary judgment upon a claim that the court, itself, raised *sua sponte*. Further, since we earlier held that the trial court erred when it granted summary judgment in favor of the Defendants on the sole claim raised within the motion, we must vacate the trial court's order and remand for further proceedings.[2]

Order vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 11/21/2023

_____

[2] Within the Defendants' brief to this Court, the Defendants claim that we should affirm the trial court's order because: Wells Fargo, not WFIS, was the Individual Defendants' employer and "Wells Fargo and [WFIS] were commingled companies." ***See*** The Defendants' Brief at 1-30. The Defendants did not raise either of these claims in their motion for summary judgment and the trial court did not grant the Defendants' motion upon either basis. Therefore, it would be inappropriate for this Court to consider either claim. ***Shamis v. Moon***, 81 A.3d 962, 970 (Pa. Super. 2013) (declaring that the Superior Court "cannot affirm a trial court's grant of summary judgment upon an argument that was never raised in support of the summary judgment motion . . . , as this would cause us to affirm on grounds that are not supported by the record") (quotation marks and emphasis omitted).